TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING









NO. 03-08-00219-CV






Senna Hills, Ltd. and HBH Development Company, LLC, Appellants


v.


Sonterra Energy Corporation, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT

NOS. D-1-GN-05-001625 & D-1-GN-05-001526, 

HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N




 We withdraw our opinion and judgment issued July 3, 2009, and substitute the
following opinion in place of the earlier one.

 Appellants Senna Hills, Ltd. ("Senna") and HBH Development Company, LLC
("HBH") (collectively, the "Developers") brought suit against appellee Sonterra Energy Corporation
("Sonterra") for breach of contract. Sonterra currently owns and operates a propane distribution
system located on the Developers' properties. Pursuant to an agreement between the Developers and
Sonterra's predecessor in interest, the Developers agreed to encumber the properties with a
public-utility easement for the installation and operation of the propane distribution system in return
for the right to receive "easement-use fees." By their suits, the Developers asserted a continuing
right to receive the fees from Sonterra and challenged the validity of the assignment of the propane
distribution system to Sonterra in light of its refusal to continue making the easement-use fee
payments. The trial court granted summary judgment for Sonterra.

 The Developers raise five issues on appeal. In issues one and two, they complain that
the trial court erred in granting Sonterra's no-evidence motion for summary judgment with respect
to the Developers' claim for reformation of the written agreement based on mutual mistake. By their
third and fourth issues, they argue that the trial court erred in granting Sonterra's traditional
summary-judgment motion as to their failure-of-assignment claims owing to their alleged third-party
beneficiary status. In their fifth issue, the Developers contend that the trial court erred in
determining that there was no ambiguity in the agreement and in granting summary judgment for
Sonterra regarding their claims for breach of contract. We will affirm the summary judgments in
part and reverse and remand in part.


FACTUAL AND PROCEDURAL BACKGROUND

 In January 1997, Senna and the Southern Union Company executed a letter agreement
granting Southern Union "the right to install, own, and operate a propane distribution system" in the
Senna Hills subdivision. As consideration for Southern Union's installation and operation of the
propane system, Senna agreed to file a restrictive covenant in the deed records for the affected lots
requiring buyers to pay Southern Union a gas service fee for every lot purchased. Senna further
agreed to provide Southern Union with an easement "sufficiently restricting the use of the lot such
that the installation and operation of the propane storage tank will not be inconsistent with or
impaired by any permitted use of the property." In return, the parties agreed that Southern Union
would pay Senna an easement-use fee based on a fixed percentage of Southern Union's gross
revenues from propane gas sales. The agreement further stated: "Except as provided below,
Developer's right to receive an Easement Use Fee shall continue for so long as the Propane System
is a propane system and the Propane System is owned by Southern Union."

 With respect to a possible sale of the system by Southern Union, the agreement
provided that Southern Union had the right "to transfer and assign, in whole or in part, all and every
feature of its rights and obligations under this Letter Agreement and in the Propane System." In the
event of such transfer,


Southern Union shall be released from any further obligation under this Letter
Agreement and Developer agrees to look solely to Southern Union's successor for
the performance of such obligations. Southern Union agrees to require any assignee
to assume full responsibility for all Southern Union's rights and obligations
hereunder.



 The following year, HBH and Southern Union executed a substantially similar
agreement regarding Southern Union's construction and operation of a propane distribution system
in HBH's subdivision, Austin's Colony Phase II. This letter agreement contained identical
provisions to those quoted above in the Senna-Southern Union agreement regarding the payment
of easement-use fees to HBH as Developer and the assignment of Southern Union's rights and
obligations under the agreement. (1)

 On or about January 1, 2003, Southern Union transferred its interests in the propane
distribution system to ONEOK Propane Distribution Company ("ONEOK"). After ONEOK had
begun operating the system, the Developers filed suit against ONEOK and Southern Union for
breach of contract, asserting that ONEOK had failed to pay the easement-use fees due under the
Propane Service Agreements and that Southern Union had failed to require ONEOK to assume the
obligation to pay the fees. Alternatively, the Developers pleaded that ONEOK's failure to pay the
easement-use fees terminated its right to occupy the premises owned by the Developers and all rights
and interests in the propane distribution system, and that ONEOK had been unjustly enriched by its
operation of the propane distribution system without compensation to the Developers. The parties
filed cross-motions for summary judgment, which were pending before the trial court when ONEOK
transferred the propane distribution system to Sonterra on October 1, 2004.

 Thereafter, the Developers, Southern Union, and ONEOK executed a Settlement
Agreement and Release, pursuant to which the parties non-suited their claims in the underlying
lawsuit. Under the Settlement Agreement, Southern Union agreed to pay $4,096.06 each to Senna
and HBH, and ONEOK agreed to pay $52,642 to Senna and $57,847 to HBH. The Settlement
Agreement recited that the foregoing payments 


represent payment in full of (i) easement use fees . . . and satisfaction of all
obligations through October 1, 2004, due under that certain Propane Service Letter
Agreement dated January 28, 1997, between Senna and SU, and that certain Propane
Service Letter Agreement dated September 10, 1998, between HBH and SU,
(collectively, the "Propane Agreements"), and (ii) attorneys' fees incurred by Senna
and HBH.



 The Settlement Agreement further provided that it did not constitute "a release,
discharge and covenant not to sue by any party to this Agreement of Sonterra" or its affiliates, and
that "Senna and HBH warrant and represent that any future lawsuit against Sonterra will be for acts
and events that occurred after the assignment by ONEOK Propane to Sonterra." Sonterra was
neither a party to that lawsuit nor a signatory to the Settlement Agreement.

 Following the assignment of the system from ONEOK to Sonterra and the settlement
of the Developers' suits against Southern Union and ONEOK, the Developers filed suit against
Sonterra for breach of the Propane Service Agreements based on its refusal to pay easement-use fees. 
The Developers also asserted that, as a result of Sonterra's alleged breach, they were entitled to
judgment terminating and rescinding any rights of Sonterra under the Propane Service Agreements
to possession or use of the propane distribution system, as well as a writ of possession and eviction
of Sonterra from their properties. In addition, they brought a cause of action for reformation of the
Propane Service Agreements, arguing that the parties executing the agreements had intended that,
"in the event Southern Union assigned the Propane Service Agreements, its assignee would be
responsible for payment" of the easement-use fees. Therefore, the Developers argued, "[if] this
intent did not get reduced to writing in the Propane Service Agreements, it was as a result of
accident, including scribner [sic] error, or mutual mistake."

 The Developers also challenged the assignment of the propane distribution system
to Sonterra, arguing that the requirement in the Propane Services Agreement "that assignees assume
obligations thereunder" was a restriction on transfer or a condition to the effectiveness of the
assignment that had not been satisfied. As alternative grounds for relief, the Developers sought a
right to recover a "developer bonus" under the Propane Service Agreements and additional damages
under principles of equity and implied contract. Finally, the Developers argued that they were
intended third-party beneficiaries of the Asset Purchase Agreement between ONEOK and Sonterra
and, as a result, they could sue to enforce Sonterra's obligations under that instrument, which, they
maintained, included the obligation to continue to pay easement-use fees pursuant to the terms of
the Settlement Agreement between the Developers, Southern Union, and ONEOK.

 Sonterra moved for summary judgment regarding Sonterra's breach-of-contract and
failure-of-assignment claims and for partial summary judgment seeking dismissal of the Developers'
claim for reformation. The Developers also moved for summary judgment on all claims. The trial
court denied the Developers' motions and Sonterra's partial summary-judgment motion, but granted
Sonterra's motion for summary judgment "in part with respect to Plaintiff's breach of contract claim
and failure of assignment claim based upon Defendant's failure to pay easement use fees," finding
that the "disputed contract language is unambiguous."

 After further proceedings, Sonterra again moved for summary judgment on both
traditional and no-evidence grounds. In its no-evidence motion, Sonterra sought summary judgment
as to the Developers' claims for reformation, arguing that there was no evidence of mutual mistake
and that the Developers had not met their burden of showing either that Sonterra had notice of the
mutual mistake or that Sonterra was not a bona fide purchaser. In response to the motion, the
Developers presented the affidavit of Rip Miller, president of the general partner of Senna and
manager of HBH. Miller averred that he intended, in the event that Southern Union assigned the
Propane Service Agreements, for Southern Union's assignees to be responsible for payment of the
easement-use fees; that he understood this to be the intent of Don Scovil, who negotiated the Propane
Service Agreements on behalf of Southern Union; and that he did not intend any language in the
agreements to negate the requirement for Southern Union's assignees to assume full responsibility
for Southern Union's obligations, including payment of the easement-use fee. Miller further stated
that if the written document did not accurately reflect this intent, such error was a mistake in
reducing to writing the parties' agreement. The Developers also presented Scovil's December 2005
deposition testimony, wherein he stated that it was his intent, in negotiating the Propane Service
Agreements, that in the event of a transfer, the new buyer of the propane distribution system would
be responsible for paying easement-use fees. (2)

 In its rule 166a(c) motion, Sonterra raised the following summary-judgment grounds: 
 (1) the court's prior ruling that the Propane Service Agreements were unambiguous as a matter of
law precluded the Developers from establishing a mutual-mistake claim; (2) even if the Developers
could establish a mutual-mistake claim, they could not seek reformation of the Propane Service
Agreements against Sonterra because Sonterra was a bona fide purchaser without notice of mutual
mistake; (3) the Settlement Agreement between the Developers, Southern Union, and ONEOK did
not create an obligation for Sonterra to pay the Developers easement-use fees; (4) Sonterra was not
required to pay the Developers a developer's bonus; and (5) ONEOK's assignment of the Propane
Service Agreements to Sonterra was valid.

 The trial court granted Sonterra's no-evidence motion "with respect to Plaintiffs'
claims of mutual mistake," and its traditional motion as to Plaintiffs' claims (1) "based upon the
Asset Purchase Agreement and Settlement Agreement," (2) "based upon Failure of Assignment,"
and (3) "seeking a developer bonus arising from ONEOK's sale of the propane system to Sonterra." 
After the trial court granted the parties' agreed motion to dismiss all remaining claims and
counterclaims, the Developers perfected this appeal.


STANDARDS OF REVIEW

 A movant seeking traditional summary judgment on its own cause of action or
affirmative defense has the initial burden of establishing its entitlement to judgment as a matter of
law by conclusively establishing each element of its cause of action or affirmative defense. 
M.D. Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000). If the movant meets
this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding
summary judgment. See id. In our de novo review of a trial court's summary judgment, we consider
all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the
nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors
could not. Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a
genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light
of all of the summary-judgment evidence. Goodyear Tire & Rubber Co. v. Mayes, 236 S.W.3d 754,
755 (Tex. 2007).

 A no-evidence summary judgment is essentially a pretrial directed verdict, which we
review under a legal-sufficiency standard. King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750 (Tex.
2003). When a party moves for a no-evidence summary judgment under rule 166a(i), he must assert
that, after adequate time for discovery, there is no evidence of one or more essential elements of a
claim or defense on which the adverse party would have the burden of proof at trial. Tex. R. Civ.
P. 166a(i); see Fort Worth Osteopathic Hosp., Inc. v. Reese, 148 S.W.3d 94, 99 (Tex. 2004). A
no-evidence summary judgment is improper if the nonmovant brings forth more than a scintilla of
probative evidence to raise a genuine issue of material fact. Tex. R. Civ. P. 166a(i). More than a
scintilla of evidence exists when the evidence presented rises to a level that would enable reasonable
and fair-minded people to differ in their conclusions. Ford Motor Co. v. Ridgway, 135 S.W.3d 598,
601 (Tex. 2004). We review the evidence in the light most favorable to the nonmovant and disregard
all contrary evidence and inferences unless a reasonable fact finder could not. City of Keller
v. Wilson, 168 S.W.3d 802, 807 (Tex. 2005).


DISCUSSION

Ambiguity in Propane Service Agreements

 Because our construction of the Propane Service Agreements necessary to resolve the
Developer's fifth issue affects our analysis of their other issues, we will address the fifth issue first. 
By their fifth issue, the Developers argue that the trial court erred in granting Sonterra's first motion
for summary judgment on the basis that the Propane Service Agreements were not ambiguous. In
its motion, Sonterra asserted that it was entitled to judgment as a matter of law as to the Developers'
claims for breach of contract and failure of assignment because the Propane Service Agreements
unambiguously provided that the Developers' right to receive easement-use fees would continue only
for so long as the propane distribution system was owned by Southern Union, i.e., if and when
Southern Union sold the system, the Developers would have no further right to receive any
easement-use fees. In so arguing, Sonterra relied on the plain language of the "Easement Use Fee"
provision common to both letter agreements, which states: "Except as provided below, Developer's
right to receive an Easement Use Fee shall continue for so long as the Propane System is a propane
system and the Propane System is owned by Southern Union."

 Sonterra asserted that this clause defeated the Developers' claims because, once
Southern Union assigned the system to ONEOK, "there was no longer an obligation to pay easement
use fees within the Agreement that was assignable," and therefore ONEOK "could not, and did not,
assign any obligation to pay easement use fees due under the Agreement when it assigned it to
Sonterra." The Developers, on the other hand, urge that the Easement Use Fee provision must be
read in conjunction with the later provision entitled "Assignments," which provides that, in the event
of transfer:


Southern Union shall be released from any further obligation under this Letter
Agreement and Developer agrees to look solely to Southern Union's successor for
the performance of such obligations. Southern Union agrees to require any
assignee to assume full responsibility for all Southern Union's rights and
obligations hereunder.



Therefore, the Developers argue, the requirement to pay easement-use fees as set forth in the first
provision is an "obligation" that Southern Union's assignee must assume in accordance with the
second provision. In light of this construction, the Developers maintain that the Propane Service
Agreements are ambiguous because they are susceptible to more than one reasonable interpretation: 
either the system owner's obligation to pay the Developers easement-use fees continued
post-assignment and was assumed by the assignee, as they argue, or any and all right to receive the
fee ceased when Southern Union assigned the system, as Sonterra asserted. See Frost Nat'l Bank
v. L & F Distribs., Ltd., 165 S.W.3d 310, 312 (Tex. 2005) ("[A] contract is ambiguous if it is
susceptible to more than one reasonable interpretation."). Accordingly, the Developers maintain that
the trial court erred in finding that the Propane Service Agreements were not ambiguous and that the
order granting Sonterra's motion for summary judgment must be reversed.

 Deciding whether a contract is ambiguous is a question of law for the court. 
Coker v. Coker, 650 S.W.2d 391, 394 (Tex. 1983). In construing a written agreement, we first
determine whether it is possible to enforce the contract as it is written. J.M. Davidson, Inc.
v. Webster, 128 S.W.3d 223, 229 (Tex. 2003). In so doing, we must ascertain and give effect to the
parties' intentions as expressed in the document. Id.; Lopez v. Munoz, Hockema & Reed, L.L.P.,
22 S.W.3d 857, 861 (Tex. 2000). We consider the entire writing and attempt to harmonize and give
effect to all the provisions of the contract by analyzing the provisions with reference to the whole
agreement. Webster, 128 S.W.3d at 229. We construe contracts "from a utilitarian standpoint
bearing in mind the particular business activity sought to be served" and "will avoid when possible
and proper a construction which is unreasonable, inequitable, and oppressive." Reilly v. Rangers
Mgmt., Inc., 727 S.W.2d 527, 530 (Tex. 1987). If, after the pertinent rules of construction are
applied, the contract can be given a definite or certain legal meaning, it is unambiguous and we
construe it as a matter of law. Webster, 128 S.W.3d at 229. Only after a contract is found to be
ambiguous may parol evidence be admitted for the purpose of ascertaining the true intentions of the
parties as expressed in the contract. Friendswood Dev. Co. v. McDade + Co., 926 S.W.2d 280, 283
(Tex. 1996) (citing National Union Fire Ins. v. CBI Indus., Inc., 907 S.W.2d 517, 521 (Tex. 1995)). 
Because we conclude that the contract language here can be given a definite legal meaning and is
not susceptible to more than one reasonable meaning, we hold that it is unambiguous.

 Read together, the "Easement Use Fee" and "Assignments" provisions of the Propane
Service Agreements reflect an intent to accomplish two related but distinct goals regarding the
payment of easement-use fees. First, by declaring that the Developers' right to receive easement-use
fees "shall continue for so long as the Propane System is a propane system and the Propane System
is owned by Southern Union," the Easement Use Fee provision released Southern Union from any
further obligation to pay easement-use fees in the event that it no longer owned the propane
distribution system. This intent is also echoed in the Assignments provision, which states that
"Southern Union shall be released from any further obligation under this Letter Agreement
and Developer agrees to look solely to Southern Union's successor for the performance of
such obligations." 

 Second, the Propane Service Agreements reveal an intent to allow the Developers to
continue receiving easement-use fees in the event of an assignment of the propane distribution
system. To that end, the Assignments provision sets forth that "Southern Union agrees to require
any assignee to assume full responsibility for all Southern Union's rights and obligations
hereunder"--including, as the Developers point out, the obligation to pay easement-use fees. We
therefore reject Sonterra's position that the Propane Service Agreements unambiguously terminated
the Developers' right to receive any and all future easement-use fee payments when Southern Union
transferred the system. But, contrary to the Developers' interpretation, the Propane Service
Agreements themselves do not directly bind Southern Union's assignee to make the easement-use
payments; rather, the agreements obligate Southern Union to require its assignee to agree to an
assumption of Southern Union's obligations under the Propane Service Agreements, including the
responsibility for payment of the easement-use fees. Put differently, while the Propane Service
Agreements evidence an intent for the Developers to continuing receiving easement-use fees, those
agreements do not, themselves, directly impose an obligation on any future assignee to pay the fees. 
Instead, the agreements made it Southern Union's responsibility to require its assignee to take on the
obligation to pay easement-use fees, which in this case means that Southern Union was obligated
to require ONEOK to assume all of Southern Union's obligations under the agreements, including
the obligation to pay easement-use fees. (3)

 Thus, by their plain language, the Propane Service Agreements imposed two distinct
obligations on Southern Union regarding payment of easement-use fees: (1) to pay easement-use
fees to the Developers for as long as it owned the propane distribution system, and (2) to require its
assignee to assume all of its contractual obligations, including the obligation to pay the easement-use
fees to the Developers. The provisions setting forth these obligations are not in conflict with one
another and do not impose inconsistent obligations. They neither mandate permanent termination
of the Developers' right to receive easement-use fees in the event Southern Union transferred
ownership of the system, nor do they create a direct obligation for the assignee of the system to pay
the fees due.

 The Developers' assertion that the Propane Service Agreements are ambiguous is
premised on their erroneous conflation of the duties that the agreements imposed on Southern Union
and the obligation that the agreements contemplate--but do not themselves require--for an assignee. 
To the extent that an assignee would have an obligation to pay easement-use fees, such obligation
must arise under some other instrument (e.g., the agreement between Southern Union and ONEOK,
which we note is not a part of the appellate record). The Propane Service Agreements themselves,
however, do not support the Developers' claims for breach of contract against the assignee of the
propane distribution system.

 Because the Propane Service Agreements are not ambiguous, and because they do
not, themselves, obligate Sonterra to pay easement-use fees to the Developers, the trial court did not
err in granting Sonterra's first motion for summary judgment with respect to the Developers' claims
for breach of contract. We overrule the Developers' fifth issue.


Mutual Mistake

 In their first issue, the Developers argue that the trial court erred in granting
Sonterra's no-evidence motion for summary judgment because the evidence raised a fact issue as to
their claim of mutual mistake. As a preliminary matter, we first address the Developers' complaints
regarding the sufficiency of Sonterra's motion.

 On appeal, the Developers argue that Sonterra's motion was incurably defective
because it failed to specify the elements as to which there was no evidence. We first note that the
Developers did not contest the adequacy of the motion to the trial court. See McConnell v. Southside
Indep. Sch. Dist., 858 S.W.2d 337, 342-43 (Tex. 1993) (holding that in order for nonmovant to
complain on appeal that grounds raised in motion for summary judgment were unclear, nonmovant
must file exception to motion); Lochabay v. Southwestern Bell Media, Inc., 828 S.W.2d 167, 170 n.2
(Tex. App.--Austin 1992, no writ) (same). Assuming without deciding that the Developers
preserved their complaint as to the sufficiency of the motion in such circumstances, we conclude
that the motion was sufficiently specific as to the elements that Sonterra challenged on
no-evidence grounds.

 By their third amended petition, after the trial court had partially granted Sonterra's
motion for summary judgment as to their breach-of-contract claims, the Developers asserted a cause
of action for reformation of the Propane Service Agreements. Specifically, they pleaded that the
parties to the Propane Service Agreements intended for Southern Union's assignee to be responsible
for payment of the easement-use fees, and if this intent did not get reduced to writing in the Propane
Service Agreements, "it was a result of accident, including scribner [sic] error, or mutual mistake,
made after the original agreement." The Developers thus sought "reformation of the Propane Service
Agreement to conform to the parties' intent." Reformation requires two elements: (1) an original
agreement and (2) a mutual mistake, made after the original agreement, in reducing the original
agreement to writing. Cherokee Water Co. v. Forderhause, 741 S.W.2d 377, 379 (Tex. 1987);
Bollner v. Plastics Solutions of Tex., Inc., 270 S.W.3d 157, 169 (Tex. App.--El Paso 2008, no pet.).

 Sonterra's motion asserts that the Developers presented no evidence of mutual
mistake. Mutual mistake is an essential element of reformation, see Cherokee Water,
741 S.W.2d at 379, a claim on which the Developers would have the burden of proof at trial,
see Tex. R. Civ. P. 166a(i) (no-evidence motion must state elements of claim or defense on which
adverse party would have burden of proof at trial and as to which there is no evidence). Therefore,
Sonterra's motion satisfied rule 166a(i) and was properly before the trial court for its consideration.

 In arguing that its summary-judgment evidence raised a fact issue as to mutual
mistake, the Developers point to Miller and Scovil's testimony to the effect that both parties intended
for the easement-use fees to continue if the system was ever assigned. As we have explained above,
however, that intent was in fact expressed in the Propane Service Agreements as written. The
language of the agreements is consistent with the evidence on which the Developers rely in their
attempt to establish mutual mistake. In his deposition, Scovil stated, "[T]here was a provision in the
contract that if Southern Union sold [the system], then the assignee would be responsible for paying
the Easement Use Fees." He further testified that he intended "on the assignments [provision] . . .
to provide a way where Southern Union could sell it's [sic] system, or the developer could sell it's
[sic] system" and "accordingly, Southern Union would have the ability to sign [sic] all of its rights
and obligations to whoever purchased the system," including the payment of easement-use fees to
the Developers; that he did not intend to relieve any person who acquired the system from Southern
Union of the obligation to pay the easement-use fees; and that the purpose of the "Easement Use
Fee" paragraph was "to establish no recourse" against Southern Union "in the event that a person
who purchase[d] the system defaulted." Miller's affidavit expressed a similar intent.

 According to the evidence, the parties made no mistake in preparing and drafting the
Propane Service Agreements. The agreements, by their plain language, accomplish what the
contracting parties testified that they intended the agreements to do: (1) create an obligation for
Southern Union to pay easement-use fees to the Developers as long as Southern Union owned the
system, and (2) create a mechanism by which the Developers would continue to receive
easement-use fees after any sale of the system by Southern Union. What the Developers now urge
is that the agreements themselves directly obligate--or were intended to obligate--an assignee of
the system to pay the Developers easement-use fees. That position, however, is simply not supported
by the unambiguous terms of the Propane Service Agreements. Because the "Assignments"
provision as it is written satisfies the parties' stated intentions regarding the "continuing" nature of
easement-use fee payments, we decline to enlarge that provision to impose an affirmative obligation
on the assignee. See Clemmens v. Kennedy, 68 S.W.2d 321, 324 (Tex. Civ. App.--Texarkana 1934,
writ ref'd) (holding that court had no power to change contract actually made and truly embodied
in written instrument on basis of reformation when evidence showed that parties made no mistake
in preparing or drafting deed). Accordingly, we hold that the Developers were not entitled to
reformation of the Propane Service Agreements and overrule the Developers' first issue.


Bona Fide Purchaser

 In their second issue, the Developers argue that, "if the trial court's March 18, 2008
order is construed to include Sonterra's no-evidence ground '(2)' as to the bona fide purchaser issue,
then the trial court erred in granting Sonterra's no-evidence motion on such ground." (4) Having
determined that Sonterra's no-evidence motion seeking judgment as a matter of law on the
Developers' reformation action was properly granted on the basis that the Developers had presented
no evidence of mutual mistake, we need not address the other grounds raised in Sonterra's motion. 
See Provident Life and Accident Ins. Co. v. Knott, 128 S.W.3d 211, 223 (Tex. 2003); see also
Tex. R. App. P. 47.1. We overrule the Developers' second issue.


Third-Party Beneficiary Claims

 By their third issue, the Developers argue that the trial court erred in granting
Sonterra's motion for summary judgment as to their third-party beneficiary claims arising under the
Asset Purchase Agreement between ONEOK and Sonterra and the Settlement Agreement between
the Developers, Southern Union, and ONEOK. The Developers pleaded that, as third-party
beneficiaries, they could sue Sonterra under those agreements, which they argued entitled them to
the continued payment of easement-use fees.

 As discussed previously, ONEOK transferred the propane distribution system to
Sonterra while the Developers' suits against ONEOK and Southern Union were still pending. The
Asset Purchase Agreement contained provisions that spoke to the ongoing litigation between these
parties. Specifically, the Asset Purchase Agreement provided in section 6.4(c): 


In the event final adjudication or settlement of either or both of the Austin's Colony
Matter and the Senna Hills Matter results in the easement use fee obligation
continuing under either or both of the developer agreements at issue in these matters,
[Sonterra] agrees to enter into any amendment to the developer agreements or new
developer agreements as necessary that requires [Sonterra] to pay easement use fees
subsequent to the Effective Date on the same terms and conditions as the existing
developer agreements.


 The Developers argue on appeal that the Settlement Agreement executed by the
Developers, Southern Union, and ONEOK "results in the easement use fee obligation continuing"
because, pursuant to the settlement, Southern Union and ONEOK paid all easement-use fees due
from them to the date of ONEOK's transfer of the system to Sonterra. The Settlement Agreement
stated that Southern Union and ONEOK agreed to pay certain sums to the Developers as "payment
in full of (i) easement use fees" and (ii) attorney's fees in "satisfaction of all obligations through
October 1, 2004." Thus, the Developers maintain, Sonterra was required under the Asset Purchase
Agreement either to amend the Propane Service Agreements or to enter into new developer
agreements so that it would be required to pay easement-use fees "subsequent to the Effective Date"
of the transfer of ownership of the propane distribution system. The Developers further argue that,
because the only existing "developer agreements at issue in this matter" were with them--Senna and
HBH--this provision of the Asset Purchase Agreement must be interpreted to mean that they are
third-party beneficiaries of that agreement and can sue to enforce Sonterra's obligations thereunder.

 Sonterra responds that the Developers cannot assert breach-of-contract claims against
it under the Settlement Agreement because Sonterra was not a party to the settlement and did not
expressly agree to any of the obligations that the Settlement Agreement allegedly created. Similarly,
Sonterra argues that the Developers cannot assert such claims under the Asset Purchase Agreement
because they were neither parties to that agreement, nor were they intended third-party beneficiaries. 
With respect to the Developers' claims arising under the Asset Purchase Agreement, Sonterra further
argues that even if the Developers could be considered third-party beneficiaries under that
agreement, the easement-use fee obligation did not "continue" as a result of the Developers'
settlement with Southern Union and ONEOK, so section 6.4(c) of the Asset Purchase Agreement
was not triggered.

 Our analysis of the third-party beneficiary issue, which is governed by
well-established principles of contract interpretation, turns on our analysis of these agreements. 
See MCI Telecomms. Corp. v. Texas Utils. Elec. Co., 995 S.W.2d 647, 650 (Tex. 1999). In the past
ten years, the Texas Supreme Court has written at least three times on the subject of third-party
beneficiaries. Those opinions provide guidance for the present case:


A third party may recover on a contract made between other parties only if the parties
intended to secure some benefit to that third party, and only if the contracting parties
entered into the contract directly for the third party's benefit.


 To qualify as one for whose benefit the contract was made, the third party
must show that he is either a donee or creditor beneficiary of, and not one who is
benefited only incidentally by the performance of, the contract. . . .


 In determining whether a third party can enforce a contract, the intention of
the contracting parties is controlling. A court will not create a third-party beneficiary
contract by implication. The intention to contract or confer a direct benefit to a third
party must be clearly and fully spelled out or enforcement by the third party must be
denied. Consequently, a presumption exists that parties contracted for themselves
unless it "clearly appears" that they intended a third party to benefit from the
contract.


Id. at 651 (citations omitted); accord South Tex. Water Auth. v. Lomas, 223 S.W.3d 304, 306 (Tex.
2007); In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 677 (Tex. 2006); Stine v. Stewart,
80 S.W.3d 586, 589 (Tex. 2002).

 Applying these principles here, we must first determine whether the Asset Purchase
Agreement evidences an intent on the part of ONEOK and Sonterra to secure some direct benefit for
the Developers, thus allowing the Developers to enforce that agreement even though they were not
parties to it. See MCI, 995 S.W.2d at 651. If we determine that ONEOK and Sonterra did so intend,
we then consider whether the settlement of the Developers' suits against Southern Union and
ONEOK resulted in the easement-use fee obligation "continuing" under the Propane Service
Agreements, thereby triggering an obligation on the part of Sonterra that the Developers could seek
to enforce.

 Sonterra argues initially that recognizing the Developers' third-party rights under the
Asset Purchase Agreement would be inconsistent with section 11.14 of the agreement, which is
entitled "No-Third Party Beneficiaries" and provides as follows: "Except as otherwise provided in
this Agreement, nothing contained in this Agreement shall entitle anyone other than Seller [ONEOK]
or Buyer [Sonterra] or their authorized successors and assigns to any claim, cause of action, remedy
or right of any kind whatsoever." While this provision is certainly evidence of the contracting
parties' intent, we cannot ignore the clause "[e]xcept as otherwise provided in this Agreement . . . ." 
In its recent third-party beneficiary cases, the supreme court has emphasized that in determining the
parties' intent, "we examine the entire agreement in an effort to harmonize and give effect to all
provisions of the contract so that none will be meaningless." Id. at 652; accord Stine, 80 S.W.3d at
589. The mere inclusion of a provision expressly disavowing third-party beneficiaries is not
dispositive and must be read in concert with other contractual provisions acknowledging the rights
of third parties. See MCI, 995 S.W.2d at 652. Accordingly, we must examine the entire agreement
to see if a different intent is "otherwise provided" therein.

 As discussed above, section 6.4 of the Asset Purchase Agreement, which appears
under the heading "PRE-CLOSING CONDUCT AND COVENANTS," contains a series of
provisions concerning the litigation involving Austin Colony and Senna Hills. It states that, after
closing, Sonterra would assume all liability for the Austin's Colony and Senna Hills matters and
ONEOK would be entitled to any recoveries, collections of money, judgments, or other benefits
relating to the litigation. Further, it provides that if the final adjudication or settlement of either or
both of the Austin's Colony Matter and the Senna Hills Matter results in the easement-use fee
obligation continuing under either or both of the developer agreements at issue in these matters,
Sonterra must "enter into any amendment to the developer agreements or new developer agreements 

as necessary that requires [it] to pay easement use fees subsequent to the Effective Date on the same
terms and conditions as the existing developer agreements." For the reasons that follow, we agree
with the Developers that this language in section 6.4 of the Asset Purchase Agreement provides
for third-party benefits in their favor and thus recognizes the sort of exception contemplated by
section 11.14.

 "To qualify as one for whose benefit the contract was made, the third party must show
that he is either a donee or creditor beneficiary of, and not one who is benefited only incidentally by
the performance of, the contract." MCI, 995 S.W.2d at 651. One is a donee beneficiary if the
performance promised will, when rendered, come to him as a pure donation, while a creditor
beneficiary is one to whom performance will come in satisfaction of a legal duty owed to him by the
promisee. Id. This duty may be an indebtedness, contractual obligation, or other legally enforceable
commitment owed to the third party. Id.; see Stine, 80 S.W.3d at 589.

 The Developers argue that they are creditor beneficiaries because the Asset Purchase
Agreement identifies them by reference to the ongoing Austin's Colony and Senna Hills litigation,
recognizes an obligation that would inure to their benefit, and binds Sonterra to perform that
obligation. Sonterra responds that, like the contract at issue in MCI, which was held not to confer
third-party beneficiary status on the claimant, the Asset Purchase Agreement fails to indicate that the
contract between it and ONEOK was entered into for the Developers' direct benefit. Evidence
of any intent to confer a benefit on the Developers is lacking, Sonterra maintains, because
"the Developers are never even mentioned anywhere in the document and nothing therein
is commensurate with a statement that the [Asset Purchase Agreement] 'inured to the benefit of
the Developers.'"

 Although some cases involving third-party beneficiary issues have pointed out when
a contract does or does not identify a would-be third-party beneficiary by name, see Lomas,
223 S.W.3d at 306, or when a contract expressly states that it "inures to the benefit" of the third
party, see Palm Harbor Homes, 195 S.W.3d at 677, the Texas Supreme Court has never held that
these are requirements that must be satisfied before a party can be deemed a third-party beneficiary. 
On the contrary, the supreme court has indicated that an intended third-party beneficiary need not
be specifically named, so long as the intent to benefit him is clear. See Knox v. Ball, 191 S.W.2d 17,
23-24 (Tex. 1945); see also MCI, 995 S.W.2d at 651-52 (deciding issue based not on fact that
contract failed to identify third party by name among class of licensees whose rights were
acknowledged in contract, but because contract did not evidence intent to provide party with any
direct benefit).

 Put another way, the requisite intent to confer third-party beneficiary status is
manifest if express reference is made to the contracting parties' obligation to a specific third party
and it is unmistakable that the contracting parties contemplated conferring on the third party the right
to enforce the obligation. Union Pac. R.R. Co. v. Novus Int'l, Inc., 113 S.W.3d 418, 422 (Tex.
App.--Houston [1st Dist.] 2003, pet. denied); see Restatement (2d) of Contracts § 302(1) (1981)
("[A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in
the beneficiary is appropriate to effectuate the intention of the parties and . . . the performance of the
promise will satisfy an obligation of the promisee to pay money to the beneficiary" or "the
circumstances indicate that the promisee intends to give the beneficiary the benefit of the
promised performance."). Here, section 6.4 of the Asset Purchase Agreement (1) acknowledges the
easement-use fee obligation contained in the existing Propane Service Agreements and (2) obligates
Sonterra to agree to pay easement-use fees "on the same terms and conditions" as the existing
agreements in the event that the easement-use fee obligation is "continuing" after the final
adjudication or settlement of the Developers' claims. While this provision does not name "Senna"
or "HBH," it does specifically refer to their right to receive easement-use fees in "the
Austin's Colony Matter and the Senna Hills Matter . . . on the same terms and conditions as the
existing developer agreements." We find Sonterra's attempts to argue that this provision "does not
actually refer to 'the developers' at all" to be contrary to the plain meaning of the agreement. See
Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996) (we construe contracts in
common-sense fashion, giving terms their plain and ordinary meaning).

 Nor are we persuaded by Sonterra's arguments that because the Asset Purchase
Agreement, by and large, pertains to contractual dealings allocating liability between it and ONEOK,
it cannot be interpreted to have been made for the benefit of the Developers as third-party
beneficiaries. "[A] third-party beneficiary does not have to show that the signatories executed the
contract solely to benefit her as a non-contracting party. Rather, the focus is on whether the
contracting parties intended, at least in part, to discharge an obligation owed to the third party." 
Stine, 80 S.W.3d at 591. The Asset Purchase Agreement, like the contract at issue in Stine, was
obviously not for the Developers' sole benefit. Yet we cannot overlook those provisions in the
agreement that expressly state that the payment of easement-use fees is an obligation that Sonterra
must perform, simply because the larger purpose of the agreement was unrelated to that obligation. 
Cf. id. at 588, 590-91 (recognizing that purpose of agreement was to dispose of contracting parties'
marital property but recognizing third-party rights of nonsignatory when agreement acknowledged
obligation to third party and directed parties to apply proceeds from sale of property to that debt).

 Although conditioned on the outcome of ONEOK and Southern Union's settlement
and whether that results in the easement-use fee obligation "continuing," Sonterra's obligation itself
is unambiguous: Sonterra must enter into an agreement, or amend the existing agreements assigned
to it, requiring it to pay easement-use fees. Sonterra does not argue, nor does the relevant case law
suggest, that the mere inclusion of such a triggering condition will obviate the clear intent of the
contracting parties to create an obligation for the benefit of third parties. See, e.g., In re Golden
Peanut Co., LLC, 269 S.W.3d 302, 313-14 (Tex. App.--Eastland 2008, no pet.) (court determined
that plaintiff spouse was intended third-party beneficiary of agreement between decedent husband
and his employer, but held that whether parties to agreement intended it to include wrongful-death
claim by surviving spouse was fact question; "This holding is without prejudice to the parties' right
to pursue the arbitration agreement's application to [plaintiff] as a third-party beneficiary further in
the trial court."). (5)

 In order to "harmonize and give effect to all provisions of the contract so that none
will be meaningless," see MCI, 998 S.W.2d at 652, we must interpret section 6.4(c) as an exception
"provided in this Agreement." Because we cannot read section 11.14 to negate the rights conferred
by section 6.4(c) on the Developers, we hold that they are intended third-party beneficiaries of the
Asset Purchase Agreement.

 Accordingly, we now turn to the question of whether the "settlement of either or both
of the Austin's Colony Matter and the Senna Hills Matter result[ed] in the easement use fee
obligation continuing under either or both of the developer agreements at issue in these matters,"
i.e., the Propane Service Agreements. If it did not, as Sonterra maintains, then Sonterra was under
no obligation "to enter into any amendment to the developer agreements or new developer
agreements as necessary [requiring it] to pay easement use fees subsequent to [October 1, 2004,] the
Effective Date" of the transfer of the system to Sonterra. If, however, the settlement did result in the
easement-use fee obligation "continuing," then Sonterra has breached this provision of the Asset
Purchase Agreement by failing to enter into the necessary agreements.

 We conclude that the language of the Asset Purchase Agreement is ambiguous as to
the meaning of "continuing." See Webster, 128 S.W.3d at 231 (holding that court may conclude that
contract is ambiguous even in absence of such pleading by either party); Coker, 650 S.W.2d at 393
(concluding that agreement was ambiguous even though both parties asserted it was unambiguous
and moved for summary judgment). A contract is ambiguous when its meaning is uncertain and
doubtful or it is reasonably susceptible to more than one meaning. Coker, 650 S.W.2d at 393-94
(citing Skelly Oil Co. v. Archer, 356 S.W.2d 774, 778 (1962)). In this case, the language concerning
whether the easement-use fee obligation is "continuing" as a result of the settlement of the
Developers' claims is ambiguous because it is susceptible to at least two different reasonable
meanings. In these circumstances, "continuing" could refer to an obligation established from the
time the Propane Service Agreements were executed and as part of those agreements--i.e., an
obligation that "continued" into the future, past any system transfer, without regard or reference to
any other agreement. This is the construction that Sonterra urges, as evidenced by its assertion that
"the Settlement Agreement does not in any way claim that the easement use fees 'continue.'" 
Indeed, for the Settlement Agreement to create a "continuing" obligation beyond the effective date
of the system transfer, it would have to create an obligation on the part of Sonterra, which it could
not do, as Sonterra was not a party to the settlement.

 But "continuing" could also reasonably be construed to mean that if, as a result of the
settlement, the Developers were entitled to receive any further easement-use fees after the point
in time when Southern Union and ONEOK had asserted that such entitlement ceased--namely,
January 1, 2003, when Southern Union transferred the system to ONEOK--then the obligation to
make easement-use fee payments could be regarded as "continuing" from the perspective of the
Developers. Put differently, since ONEOK had taken the same position that Sonterra adopted in
this case--i.e., that the Developers' right to receive easement-use fees ceased forever when
Southern Union transferred the system--then an acknowledgment by ONEOK that it did in fact owe
easement-use fees to the Developers after the transfer from Southern Union took place could
reasonably be understood as a "continuation" of the obligation to pay the fees. Thus, the statements
in the Settlement Agreement that ONEOK's payments of $52,642 to Senna and $57,847 to HBH
representing "payment in full" of easement-use fees and satisfaction of all obligations through
October 1, 2004, due under the Propane Service Agreements could arguably support a claim that the
obligation "continued," thereby triggering Sonterra's obligations under section 6.4(c) of the Asset
Purchase Agreement.

 In light of this ambiguity, "the granting of a motion for summary judgment [was]
improper because the interpretation of the instrument becomes a fact issue." Coker, 650 S.W.2d at
394 (citing Harris v. Rowe, 593 S.W.2d 303, 306 (Tex. 1980)). "The trier of fact must resolve the
ambiguity by determining the true intent of the parties." Id.; Trinity Universal Ins. Co. v. Ponsford
Bros., 423 S.W.2d 571, 575 (Tex. 1968). We therefore sustain the Developers' third issue on appeal
and hold that the trial court erred in granting Sonterra's motion for summary judgment as to the
Developers' third-party claims arising under the Asset Purchase Agreement.


Failure of Assignment

 By their fourth issue, the Developers argue that the trial court erred in granting
Sonterra's second motion for summary judgment with respect to their claims based on failure of the
assignment of the system from ONEOK to Sonterra.

 In addition to seeking damages for breach of contract, the Developers pleaded that
Sonterra's refusal to pay easement-use fees due under the Propane Service Agreements rendered the
assignment from ONEOK to Sonterra "ineffective." The Developers premised this complaint on
(1) their reading of the "Assignments" provision of the Propane Service Agreements as a restriction
on transfer, and (2) their alleged third-party beneficiary status as derived under the Asset Purchase
Agreement between ONEOK and Sonterra, which contained the following provision: 


Should any of the Assets be subject to a valid consent to assign or other restriction
on transfer as to which the assignment hereunder would be a breach of such
obligation or result in the termination of such Asset(s), then any such Asset(s) shall
be deemed not transferred hereunder unless and until such consent or other
restriction is obtained or waived from or by the third party having such right.



(Emphases added.) Thus, the Developers asserted that, as third-party beneficiaries of the
ONEOK-Sonterra Asset Purchase Agreement, they had the right to "enforce the transfer restriction
(or transfer voidance) provision" of that agreement. We disagree.

 The Assignments provision of the Propane Service Agreements is not a restriction
on transfer. It states only that Southern Union has an affirmative obligation "to require any assignee
to assume full responsibility for all of Southern Union's rights and obligations" under those
agreements. By its own terms, it poses no "restriction" and is silent as to what effect noncompliance
with the provision has on the validity of the transfer. Cf. OAIC Commercial Assets, L.L.C.
v. Stonegate Vill., L.P., 234 S.W.3d 726, 733 n.3 (Tex. App.--Dallas 2007, pet. denied) (giving
effect to restriction on transfer stating that "no Partner shall Transfer all or any portion of its Interest
or any rights therein" under certain conditions and that any transfer or attempted transfer in violation
of stated conditions "shall be null and void and of no effect whatever").

 Moreover, the record contains no evidence that the Developers' consent was required
in order to effect transfer of any asset subject to the Asset Purchase Agreement between ONEOK
and Sonterra. Thus, to the extent that a "failure of assignment" cause of action even exists under
Texas law, the Asset Purchase Agreement does not support recovery under such a theory in this case. 
As Sonterra points out, the provision on which the Developers rely prevents the transfer of an asset
(1) in the event such transfer would cause a breach or termination of the asset or (2) if the transfer
is conditioned upon the consent of a third party and that consent has not been obtained. The
Developers' argument regarding Sonterra's "failure and refusal to pay easement-use fees" after
ONEOK transferred the system assets does not fall within either of the situations contemplated by
this provision.

 Furthermore, as we have previously discussed, the Asset Purchase Agreement
contains a clause that precludes a third party from asserting claims under the agreement "[e]xcept
as otherwise provided in the Agreement." The Agreement, however, contains no provision that
confers on any third party the right to challenge the validity of the transfer of the system from
ONEOK to Sonterra. "The intent to confer a direct benefit upon a third party 'must be clearly and
fully spelled out or enforcement by the third party must be denied.'" Lomas, 223 S.W.3d at 306
(quoting MCI, 995 S.W.2d at 651). Despite the absence of such intent, the Developers nonetheless
argue that the "No Third-Party Beneficiaries" provision itself demonstrates "that both Sonterra and
ONEOK expressly acknowledged third party beneficiaries in their asset purchase agreement." On
the contrary, although the agreement acknowledges that if a third party possesses a right to restrict
the transfer of an asset subject to the agreement by withholding its consent, it may do so, it does not,
directly or indirectly, confer such a right on any party. See id. ("A third party may only enforce a
contract when the contracting parties themselves intend to secure some benefit for the third party and
entered into the contract directly for the third party's benefit.").

 We hold that the trial court properly granted summary judgment in favor of Sonterra
on the Developers' failure-of-assignment claims and overrule the Developers' fourth issue.

CONCLUSION

 We reverse the trial court's summary judgment with respect to the Developers'
third-party beneficiary claim for breach of the Asset Purchase Agreement, and we remand that
portion of the cause to the trial court for further proceedings consistent with this opinion. We affirm
the remainder of the trial court's judgment.



 

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Henson

 Dissenting Opinion by Justice Puryear

Affirmed in part; Reversed and Remanded in part on Motion for Rehearing

Filed: January 15, 2010


 





 
1. For convenience, we will refer to the Senna-Southern Union and HBH-Southern Union
letter agreements collectively as the "Propane Service Agreements."
2. Scovil testified as follows:


Q. Can you tell us whether or not you agreed with Mr. Miller on behalf--you
acting on behalf of Southern Union, he acting on behalf of HBH and Senna
Hills, that if Southern Union were to sell the systems, that whoever bought
them would continue to be responsible for and would continue to pay the
Easement Use Fee?


A. Yes. The agreement--what also then relieves Southern Union of it's [sic]
obligation to pay Easement Use Fees because the property was then assigned
and sold to someone else.


Q. And to your understanding was your agreement that the new buyer would be
responsible for those fees; can you state whether or not that was your
understanding?


A. Yes, that was my intent.


Scovil further testified that he instructed the Southern Union attorney who drafted the Propane
Service Agreements, "I want a provision in there that, you know, if the system was ever sold, [then]
the [easement] use fees would continue."
3. The Developers apparently recognized that the Propane Service Agreements so required,
as they initially asserted a breach-of-contract claim against Southern Union for failing to require
ONEOK to assume the obligation to pay the fees.
4. The trial court's order granting Sonterra's motion states, "Defendant's No Evidence Motion
for Summary Judgment with respect to Plaintiffs' claims of mutual mistake in both [cause numbers]
is hereby GRANTED."
5. 
 Stine v. Stewart is also instructive on this point. 80 S.W.3d 586 (Tex. 2002). The
agreement at issue in that case, like the agreement here, phrased the parties' obligation to the third
party conditionally: "if Stewart sold [the property], he agreed that any monies owing to Stine are to
be paid in the current principal sum of $50,000." Id. at 588 (emphases added). The court of appeals
had held that Stine was not a third-party beneficiary because the agreement did not "clearly and
unequivocally" acknowledge the debt owed to Stine and, therefore, did not express Stewart's
willingness to pay any debt. Id. at 589. Reversing, the supreme court determined that the
acknowledgment of the debt and reference to the unpaid principal sum were sufficient evidence of
Stewart's intent, by the agreement, to confer a benefit on Stine and held that Stine could sue to
enforce the agreement even though she was not a signatory to it, in the event that the property was
sold. Id. at 590-91. Likewise, the agreement in our case premised Sonterra's obligation upon some
future event.