**CHEROKEE WATER COMPANY, Petitioner,**

v.

**Martha Paul Rogers FORDERHAUSE et al., Respondent.**

No. C–6365.

Supreme Court of Texas.

Dec. 9, 1987.

Rehearing Denied Jan. 20, 1988.

Gordon R. Wellborn, Wellborn, Houston, Adkison, Mann & Sadler, Henderson, John W. Stayton, Jr., McGinnis, Lochridge & Kilgore, Lloyd Lochridge, McGinnis, Lochridge & Kilgore, John M. Hohengarten, McGinnis, Lochridge & Kilgore, Austin, for petitioner.

D.L. Case, Jackson, Walker, Winstead, Cantwell & Miller, Jack Pew, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Dean W. Turner, Bath, Turner & Barber, Henderson, for respondent.

ROBERTSON, Justice.

Martha Forderhause and others sued Cherokee Water Company seeking reformation of a deed provision which granted Cherokee a right of first refusal on all oil and gas leases. The deed provision in question provides:

Grantee is hereby given the first option to purchase the oil, gas and other minerals herein reserved, at the same price and on the same terms as Grantor has agreed to sell to a third party; such option to be accepted or rejected within five (5) days after Grantee has been furnished with the bona fide offer made by such third party. Failure to exercise such option on one sale, shall not be a waiver to purchasing at any subsequent sale or sales by Grantor.

The case was tried to a jury which found that the parties' failure to exclude oil and gas leases from the provision granting Cherokee a right of first refusal was a result of mutual mistake. The trial court subsequently rendered a judgment reforming the deed to exclude oil and gas leases from Cherokee's right of first refusal. The court of appeals, with one justice dissenting, affirmed that judgment. 727 S.W.2d 605. We reverse the judgment of the court of appeals and render judgment for Cherokee.

In the mid–1940's, a group of men in Henderson, Kilgore, and Longview began to acquire land with an eye towards building what is now Lake Cherokee in Gregg and Rusk counties. They employed Clyde Hall to draft a form deed which in essence gave the land to Hall, as trustee for Cherokee, with the grantors reserving the oil, gas, and other minerals. This form deed was prepared by Hall no later than January of 1947.

During the summer of 1947, Hall, along with some other men, met C.E. "Shot" Rogers and discussed with him the possibility of buying his land in order to build the lake. Rogers declined their proposals and added that his brothers would likely feel the same way. On August 19, 1947, the three Rogers brothers and their wives met with G.W. Sharp at "Shot" Rogers' store in Rusk County. G.W. Sharp was one of several landmen hired by Hall to obtain landowners' signatures on the preprinted deeds.

The only testimony concerning what was said at this meeting comes from direct testimony elicited from Fairy Rogers:

Q. Now, let me ask you this. Did Mr. Sharp, in your presence, say anything about whether what you've just read [the option provision in the deed] to the Jury did or did not apply to oil and gas leases?

A. He said we could lease it when we wanted to—any time we wanted to to anybody. He said that [referring to the option clause in the lease [sic —should be "deed"]] which she had just read] didn't apply to it, and we taken it that way because we had a chance to lease several times and we didn't ask them because we didn't think we had to ask them.

Q. Did you folks tell Mr. Sharp anything about the sale of minerals, whether or not you intended to sell the minerals?

A. Oh, yes. We told him we never aimed to sell them throughout our lifetime. It was ours to keep, never to sell. We didn't want to sell them to Cherokee Water Company or anybody else. We were just keeping them to lease.

Q. All right. What, if anything, did you say about wanting to lease the property? What did you tell Mr. Sharp about that?

A. Well, we wanted to lease it, of course. We'd love to lease it.

Q. And do I understand that he told you that what you read to the Jury wouldn't affect that right?

A. Right.

Q. After that discussion, did you folks sign your names to this deed?

A. Yes, Sir.

It should also be noted that Mrs. Rogers had testified earlier that the above-quoted discussion took place *after* the deed had been signed. Some two years later, Hall assigned to Cherokee the lands covered by 167 similar form deeds, including the Rogers'.

In June of 1950, the Rogers brothers executed an oil and gas lease to Atlantic Refining Company involving the land covered under the deed with Hall. At no time did the Rogers inform Cherokee of this transaction, much less give them the right of first refusal on the lease. When the 1950 lease to Atlantic expired in 1976, the Rogers brothers again executed another oil and gas lease, this time to E.S. Boase and Neil Woods. In 1978, Cherokee brought a suit for specific performance against the Rogers brothers, claiming that their actions in executing the 1976 lease violated Cherokee's preemptive rights as stated in the deed. The Rogers filed a counterclaim seeking reformation of the deed. The trial court ultimately severed the reformation claim from Cherokee's original suit. On appeal from Cherokee's suit, this court held that (1) the deed provision granting Cherokee its right of first refusal included oil and gas leases and (2) the trial court did not abuse its discretion in severing the Rogers' counterclaim for reformation. *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525, 526 (Tex.1982). It is the severed counterclaim which is now before us.

■ The underlying objective of reformation is to correct a mutual mistake made in *preparing* a written instrument, so that the instrument truly reflects the *original* agreement of the parties. *Brinker v. Wobaco Trust Ltd.*, 610 S.W.2d 160, 163 (Tex. Civ.App.—Texarkana 1980, writ ref'd n.r. e.). By implication, then, reformation requires two elements: (1) an original agreement and (2) a mutual mistake, made *after* the original agreement, in reducing the original agreement to writing. *Sun Oil Co. v. Bennett*, 125 Tex. 540, 547, 84 S.W. 2d 447, 451 (1935); RESTATEMENT (SECOND) OF CONTRACTS § 155, comment a (1979). A court is without power to make a contract that the parties did not make; an actual agreement reached prior to the drafting of the instrument involved is a requisite to an action for reformation. *Continental Oil Co. v. Doornbos*, 402 S.W. 2d 879, 883 (Tex.1966).

The trial court submitted the following two issues on reformation:

### ISSUE NO. 2

Do you find that, before the signing of the Deed in question, Grantors and Grantee had made an agreement that the first option clause of such Deed would not include leases of oil, gas and other minerals?

### ISSUE NO. 3

Do you find that the failure of the first option clause of the Deed in question to expressly exclude leases of oil, gas and other minerals was the result of a mutual mistake as to the legal effect of the language used in such first option clause?

The jury answered "yes" to both issues and the trial court rendered judgment reforming the deed. Based upon the issues submitted, we hold that the trial court improperly granted the Rogers' reformation claim.

■ Although issue no. 2 does ask if the parties made an agreement concerning the first option clause, it fails to ask the jury whether this agreement was made *prior* to the deed being reduced to writing. The fact that an agreement was reached "before the signing of the Deed" is of no

consequence in a reformation cause of action. To support a judgment for reformation, the jury was required to find that the parties entered into an agreement concerning the first option clause and subsequently made a mistake in reducing this prior agreement to writing. Indeed, the facts of this case preclude reformation of the deed as a matter of law. As testified to by Fairy Rogers, any discussion, much less agreement, concerning the right of first refusal provision occurred after the deed was signed. Absent a prior agreement, and a mutual mistake in reducing that agreement to writing, a cause of action for reformation cannot stand.

As observed by the dissent in the court of appeals, this case does not involve the requisite agreement made *before* the deed was reduced to writing; rather, we are dealing with an antecedent writing—the form deed drafted by Hall in January of 1947. 727 S.W.2d at 623 (Bliel, J., dissenting). The majority wrestled with this flaw in the case by noting that "[t]he fact that the instrument had been prepared prior to the agreement should not bar reformation." 727 S.W.2d at 617. Unfortunately, however, this vital omission does indeed preclude a court from reforming the deed in question. Were we to uphold the reformation of this deed based upon this flawed special issue, we would turn this equitable doctrine on its ear by making and enforcing a contract the parties *never* agreed to. Such a result has been expressly denounced by this court. *Continental Oil Co.*, 402 S.W.2d at 883 (court "cannot create and bring into being an agreement not made by the parties").

■ As for issue no. 3, it, too, falls short of the mark in that it does not require the jury to find that the "mutual mistake" occurred in reducing the parties' prior agreement to writing. As stated earlier, the second element of a reformation claim centers around previously agreed to provisions being erroneously written into an instrument by mutual mistake. *Brown v. Harvard*, 593 S.W.2d 939, 943 (Tex.1980). As submitted, issue no. 3 fails to require a finding of this element; therefore, it could

not support a judgment granting reformation. *Sun Oil Co.*, 125 Tex. at 547, 84 S.W.2d at 451.

The Forderhauses cite *State v. Wales*, 271 S.W.2d 728 (Tex.Civ.App.—Beaumont 1954, writ ref'd n.r.e.), for the proposition that reformation was the proper remedy in this case. In *Wales*, a county judge, acting under a written order from the commissioners court, acquired land to be used as a right of way for a state highway. Pursuant to this order, the judge entered into a deed with certain grantors which in fact conveyed a fee simple title to the state instead of a right of way. During negotiations on this deed, the judge told the grantors that they were conveying only a right of way. Upon discovering that they had indeed conveyed a fee simple title, the grantors filed suit seeking to reform the deed on the grounds of mutual mistake. The trial court reformed the deed on this ground so that it conformed to the commissioners' order seeking only a right of way. The court of appeals affirmed. According to the Forderhauses, *Wales* stands for the proposition that reformation is proper when it is shown that the parties entered into an agreement before they *executed* the allegedly incorrect written instrument. We disagree.

In *Wales*, the county judge made a mistake when he reduced his "agreement" with grantors to writing. The actual "agreement," however, was the commissioners' order authorizing the judge to acquire rights of way. The two elements of reformation, then, were clearly present in *Wales*: (1) a prior agreement between the parties (the commissioners' order) and (2) a mutual mistake in reducing that agreement to writing (the county judge's erroneous deed). The court of appeals in *Wales* even found that the evidence presented supported the following finding of fact by the trial court:

7. That such instruments were prepared by A.L. Bevil as agent for the State of Texas, and *a mistake,* mutual to all parties, *was made in reducing the agreements of said parties to writing* so that such writing did not represent the real

contracts; and those parts of the instruments which are at variance with the true agreements *were inserted* by mutual mistake of all the parties to such instruments.

*Wales,* 271 S.W.2d at 734.

In comparison, this case involves no prior agreement. There was no mutual mistake in reducing an agreement to writing. All that we have in this case is a form deed which contained the total agreement between the parties. The agreement had been reduced to writing almost eight months before it was signed. In short, not only is *Wales* factually distinguishable from the instant case, but it is also clearly in line with our holding today.

Although we are sympathetic to the Forderhause's situation, we are compelled to hold in favor of Cherokee. The Forderhause's attorneys, in their Amended Counterclaim, alleged several grounds of recovery against Cherokee, including misrepresentation, coercion, and undue influence. Reformation of the deed on the grounds of mutual mistake was pleaded in the alternative; however, this is the only theory of recovery which was ultimately submitted to the jury. During oral submission before this court, counsel for the Forderhauses conceded that his decision to submit the case to the jury solely on the theory of reformation was reached after he evaluated all of the evidence presented. For whatever reason, though, we are bound to analyze this case only from the perspective of whether the evidence in the record will support the jury's finding that reformation was the proper remedy.

Inasmuch as we have found that reformation fails as a matter of law, we reverse the judgment of the court of appeals and render judgment for Cherokee.