Opinion issued February 27, 2003
     














In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00499-CV




ESTATE OF VERNON HEARN, DECEASED; CHESTER HEARN,
INDIVIDUALLY, AND AS CO-EXECUTOR OF THE ESTATE OF
VERNON P. HEARN, AND AS CO-TRUSTEE OF THE HEARN FAMILY
TRUST; ROGER HEARN, GALE HEARN DANIEL, AND DALE HEARN,
INDIVIDUALLY, AND AS INDEPENDENT CO-EXECUTOR OF THE
ESTATE OF VERNON P. HEARN, AND AS CO-TRUSTEE OF THE
HEARN FAMILY TRUST, Appellants

V.

LOUISE HEARN, INDIVIDUALLY, AND AS INDEPENDENT CO-EXECUTOR OF THE ESTATE OF VERNON P. HEARN, Appellee



On Appeal from the Probate Court No. 2
Harris County, Texas
Trial Court Cause No. 301,472




O P I N I O N

          This case involves the issue of contractual wills. Specifically, we must decide
whether wills executed simultaneously by the testator and his wife contain mutual
contractual agreements to fund a family trust with the property of both spouses upon
the death of the first spouse. Because we hold that there were no such contractual
agreements, we affirm the trial court’s judgment.
BACKGROUND
1. The Family
          Vernon Hearn died on November 4, 1998. He was survived by Louise Hearn,
his wife of 42 years, and four children from a previous marriage—Chester, Roger,
Gale, and Dale (the Children). 
2. The Creation of the Wills and the Trust
          In 1993, Vernon and Louise created the Hearn Management Trust,


 a revocable
trust for their benefit during their lives, which contained provisions relating to the
disposition of trust assets upon the death of both spouses. Upon the death of the first
spouse, the trust became irrevocable. The trust was funded with the nominal amount
of 10 dollars, and no other assets were ever transferred to the trust during Vernon’s
lifetime.
          At the same time the Trust was created, the Hearns executed nearly identical
wills. Generally, the wills provide for the disposition of the testator’s personal and
household effects to the surviving spouse, with the residuary estate going to the Trust.
3. The Litigation
          It is undisputed by the parties that the trust will be funded by Vernon’s
property, both community and separate. However, the Children filed a declaratory
judgment action against Louise, alleging that she and Vernon had executed
contractual wills that required her, upon Vernon’s death, to fund the trust with not
only Vernon’s property, but also with her property. In effect, the Children argued that
Louise’s will also became effective when Vernon died.
          The Children filed a motion for summary judgment asking the court to declare 
that Vernon and Louise had contractual wills, which required Louise to fund the trust,
upon Vernon’s death, with both Vernon’s and Louise’s property. Louise filed a
motion for summary judgment asking the court to declare that she was under no
contractual obligation to fund the trust with her property. The trial court granted
Louise’s motion, denied the Children’s motion, and then severed the claims in these
motions from others still pending in the case. This appeal followed.
STANDARD OF REVIEW
          We follow the usual standards of review for an order granting one party’s
summary judgment motion, and denying other parties’ summary judgment motions,
under rule 166a(a), (b), or (I). See Tex. R. Civ. P. 166a(a), (b), (I); Dow Chem. Co.
v. Francis, 46 S.W.3d 237, 242 (Tex. 2001) (summary judgment order not specifying
grounds); Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999) (order
granting and denying cross-motions for summary judgment); Science Spectrum, Inc.
v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997) (standard of review and burden under 
rule 166a(a), (b)); Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.,
994 S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (standard of
review and burden under rule 166a(I)).
CONTRACTUAL WILLS
1. Admissibility of Extrinsic Evidence
          Before we construe Vernon’s will to determine whether there was a contractual
agreement, we must first decide whether we should consider extrinsic evidence, or
whether our review is limited to the terms of the will itself.
          Section 59A of the Texas Probate Code provides as follows:
a. A contract to make a will or devise, or not to revoke a will or devise,
if executed or entered into on or after September 1, 1979, can be
established only by provisions of a will stating that a contract does exist
and stating the material provisions of the contract.
 
b. The execution of a joint will or reciprocal wills does not by itself
suffice as evidence of the existence of a contract.

Tex. Prob. Code Ann. § 59A (Vernon 1980) (emphasis added).
          We must construe statutes as written and, if possible, ascertain intent from the
statutory language. Marcus Cable Assocs., L.P. v. Krohn, 90 S.W.2d 697, 706 (Tex.
2002). We may also consider other factors, including the object the statute seeks to
obtain, legislative history, and the consequences of a particular construction. Id.
          We believe that the intent of section 59A is clear—a contractual will can only
be established “by provisions of a will.” Therefore, we will not consider any extrinsic
evidence in determining whether a contractual will exists in this case.



2. The Will
          Having decided that extrinsic evidence is not permissible to establish a
contractual will, we turn to the terms of the will itself.


 In the section of Louise’s will 
entitled “Tax Elections,” the will contains the following provision:
                    In paragraph D-5 of the Trust Agreement, my husband [and
in the case of Vernon’s will, “my wife”] and I have
contracted that we each will execute and maintain in force
a will which directs our respective executors to make a
marital deduction election under certain circumstances. In
accordance with such agreement, and to evidence and
perfect the same in accordance with Section 59A of the
Texas Probate Code, I hereby direct that if I am the “first
deceased trustor” within the meaning of the Trust
Agreement, my executor shall elect in full Section
2056(b)(7) of the Internal Revenue Code to have all
property passing to the Marital Trust established under
Section D of the Trust Agreement treated as qualified
terminable interest property for federal estate tax marital
deduction purposes.

          The Children contend that this clause establishes a contract regarding
succession that requires Louise to place her portion of the community property in the
trust along with Vernon’s portion, which passed to the trust upon his death.
          We agree with the Children that this clause meets the requirements of section
59A by (1) stating in the will(s) that Vernon and Louise have entered into a contract
and (2) providing the material terms of that contract. However, we disagree with the
Children over the material terms of the contract.
          Nothing in either will suggests that Louise’s will would become effective on
the date of Vernon’s death. Instead, the will provides that both spouses will maintain
a will that directs his/her executor to elect a marital deduction for federal estate tax
purposes for any property passing into the trust upon his/her death. The will does not
require that this will be maintained, and nowhere does it require Louise to put her
property in the trust before her death. Clearly, the sole purpose of the contract was
to assure that any property passing to the trust upon the death of the “first deceased
trustor” would qualify for a federal income tax marital deduction.



          In this case, Vernon was the “first deceased trustor” and his will, according to
the terms of the contract, required his executor to make a marital deduction election
for all property passing to the marital trust result as a result of his death. This
contract between Vernon and Louise was completed when Vernon died and his
residuary estate, including his portion of the community property, passed to the
marital trust and his executor made a marital deduction election.
3. The Trust
          Even if we were to consider the provisions of the Trust Agreement, we would
still conclude that there was no agreement for Louise to fund the trust with her
property upon Vernon’s death. The relevant trust provisions provide:
It is the intention of both trustors that the property distributed to this
trust upon the death of the first deceased trustor shall qualify for the
marital deduction allowed by the federal estate tax law applicable to the
first deceased trustor’s estate. All questions applicable to that gift and
to this trust shall be resolved accordingly. No powers or discretion of
the trustee with respect to this trust shall be exercised or exercisable
except in a manner consistent with this intent.
 
Each trustor hereby contracts with the other that he or she will execute
and maintain in force at all times following the execution of this trust
agreement a will directing his or her executor (if he or she is the first
deceased trustor) to elect in full under Section 2056(b)(7) of the Code
to have all property passing to the Marital Trust hereunder treated as
“qualified terminable interest in property” for federal estate tax marital
deduction purposes.

          This language, like the language in the wills, indicates only that Louise and
Vernon intended to created a QTIP trust, which would qualify for a marital deduction,
upon the death of the first spouse. There is nothing in this language that suggests that
Vernon and Louise had contracted to fund the trust with the surviving spouse’s
property upon the death of the first spouse.
          The trust agreement describes the assets of the trust as (1) the $10 originally
used to fund the trust and (2) “all other properties, real or personal, which any person
may at any time and in any manner add or cause to be added to the trust estate.” The
trust agreement then characterizes the property in the trust by stating,
As long as both trustors have an interest in the Hearn Management
Trust, all property held in the trust estate of the Hearn Management
Trust shall have the same character for marital property purposes as it
would have had if the Hearn Management Trust had never been created,
and the character of any such property withdrawn by or distributed to a
trustor for the trust shall continue in the hands of the recipient.”
(Emphasis added).

          The agreement then defines the trustors’ “interest in the trust estate” as “all
property in the trust estate which, but for this trust agreement, would be owned by
that trustor (or his or her estate) as separate property or his or her one-half of the
community property.” (Emphasis added).
          While this language contemplates that community or separate property may be
placed in the trust, and that the characterization of such property would continue even
after being placed in the trust, it does not compel the funding of the trust by either
Vernon or Louise.
          The only language that we can find that compels the funding of the Trust is the
devise in Vernon’s will. As Louise is not yet deceased, the devise to the trust found
in her will is not yet effective, nor is it irrevocable. See Meyer v. Shelley, 34 S.W.3d
619, 623 (Tex. App.—Amarillo 2000, no pet.) (holding breach of contractual
agreement to make a certain devise not ripe until testator dies).
          Therefore, we hold the trial court correctly ruled that, as a matter of law, Louise
did not contractually agree to fund the trust with her own property at the time of
Vernon’s death.
REFORMATION
          The Children argue that if we determine there was no contractual agreement
for Louise to fund the trust upon Vernon’s death, we should reform the trust
agreement to reflect Vernon’s intent in creating the trust.
          The underlying objective of reformation is to correct a mutual mistake made
in preparing a written instrument, so that the instrument truly reflects the original
agreement of the parties. Cherokee Water Co. v. Forderhause, 741 S.W.2d 377, 379
(Tex. 1987). By implication, then, reformation requires two elements: (1) an original
agreement and (2) a mutual mistake, made after the original agreement, in reducing
the original agreement to writing. Id.
          Louise contends that there is no evidence of either element. Specifically,
Louise contends that there is no evidence that she ever agreed to place her property
in the trust upon Vernon’s death. She testified that she never discussed the estate
plan with Vernon and she never met Mr. Jukes, the attorney who drafted the will and
trust agreement.
          In contrast, the Children point to a letter from Mr. Jukes to both Vernon and
Louise, which, they argue, implies that both Vernon and Louise agreed to place their
property in the trust upon the death of the first spouse. The Jukes letter provides in
pertinent part:
The wills for each of you do not add much to the estate plan—instead
they add each person’s estate to the trust, and the trust will be the
document which governs where it goes.
 
* * * * 
 
With the exceptions mentioned above, your estate plan will provide that
when one of you has died, survived by the other, the entire estate will be
left in trust for the benefit of the surviving spouse.
 
* * * * 
In going over these documents and preparing any questions that you
would like to ask me about them, there are several things that I would
like both of you to bear in mind. The first is that, as I understand you
both have agreed, this is a “joint” estate plan. What that means is that
both of you are committing to put this plan in force, and once these
documents are signed, the plan can not be changed without both of you
agreeing to the change. As a consequence of that, the Plan can not be
changed at all following the death of one of you. Each of you receives
substantial benefits from the other’s portion of the estate under this plan,
but is also giving up something in terms of the ability to make changes
on your part later. (Emphasis added).

          We do not agree that this letter raises a fact question about whether Louise and
Vernon agreed to fund the trust with both their property after Vernon’s death. The
first sentence in the letter above states that the wills add each spouse’s estate to the
trust. This does not, however, imply that each spouse’s property passes, as a whole,
to the trust, upon the death of the first spouse. Each spouse’s will transfers his or her
own property. Wills, by their very nature, are only effective upon death, and only
cause a transfer of property upon death. See Shriner’s Hosp. v. Stahl, 610 S.W.2d
147, 150 (Tex. 1980) (holding that “[a] will speaks at the time of the testator’s death,
and it is the estate he then possessed that passes according to the terms of that will.”)
(citing Haley v. Gatewood, 74 Tex. 281, 12 S.W. 25, 26 (1889)); see also Meyer, 34
S.W.3d at 623 (holding that even existence of a contractual will regarding the
ultimate disposition of one’s property does not prevent spouse from transferring
property inter vivos).
          The Jukes letter also states that, when one of the spouses dies, the entire estate 
will be left in trust for the benefit of the surviving spouse. The term “entire estate”
refers to Vernon’s estate. As Louise is not yet deceased, she has no “estate” to pass
to the trust.
          Therefore, we conclude that the Jukes letter is not evidence of an agreement
between Louise and Vernon to fund the trust with both of their property upon the
death of the first spouse. There being no evidence of an original agreement between
Vernon and Louise, there is nothing for the Court to reform.



          That the trust became irrevocable upon Vernon’s death means that property
already in the trust (or placed there as a result of his death) could be disposed of only
according to the terms of the trust agreement. Again, nothing in the Jukes letter
suggests that Louise had an obligation to place her property in the trust before her
death.
          Accordingly, the trial court did not err in rendering summary judgment in favor
of Louise on the Children’s claim for reformation.
CONCLUSION
          We affirm the judgment of the trial court.
 
 
                                                                        Sherry Radack
                                                                        Chief Justice

Panel consists of Chief Justice Radack and Justices Nuchia and Hanks.