In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-17-00026-CV

**MELISSA BARCLAY, Appellant**

**V.**

**AURY GENE RICHEY, Appellee**

_____

**On Appeal from the 136th District Court**
**Jefferson County, Texas**
**Trial Cause No. D-194,462**

_____

**MEMORANDUM OPINION**

In a dispute over ownership of a house, Melissa Barclay appeals the trial court's final amended judgment claiming the trial court erred by (1) denying her motion for instructed verdict on Aury Gene Richey's counterclaim for reformation of deed, (2) awarding excessive damages for unjust enrichment to Richey, and (3) failing to award Barclay reasonable and necessary attorney's fees on her declaratory judgment cause of action.

1

We conclude the trial court properly denied Barclay's directed verdict on Richey's counterclaim for reformation of deed. We also determine the damages awarded to Richey for unjust enrichment were properly supported by the evidence with respect to the sums awarded for Richey's payment of property taxes, for payoff of Barclay's mortgage, and for remodeling of the residence. However, the evidence is legally insufficient to support the award of unjust enrichment damages for premiums Richey paid to insure the property. We modify the amended final judgment to strike that portion of the damages awarded to Richey for payment of insurance premiums. With respect to Barclay's claim for attorney's fees, we conclude the trial court properly denied Barclay's claim for attorney's fees on her declaratory judgment claim. We affirm the trial court's amended final judgment as modified.

## Background

Barclay purchased the property at issue in 2000, obtaining a mortgage secured by a purchase money security interest. Barclay admittedly fell behind on payments, and foreclosure was imminent. According to Barclay, in order to avoid foreclosure in February 2007, Richey, her stepfather, loaned her approximately $78,000.00 to pay off the outstanding note and obtain a release of lien on the home. In February 2009, a dispute arose over what Barclay agreed to in return for Richey's payment of

2

the balance of her mortgage. It is undisputed Richey paid the balance owed to Barclay's lender for the purchase money mortgage on the home. Barclay asserted that in exchange for the money, she signed a promissory note and deed of trust to repay Richey in the amount he paid to extinguish her mortgage, $78,733.15, plus 12% interest. Richey contended that Barclay agreed to sell him her home and execute a lease with the option to buy back the home in two years.

According to Barclay, for the next twenty-seven months—March 2007 until March or April 2009—she paid $1,000.00 a month either by check or in cash to satisfy the note Richey held. In 2009, when Barclay sought to obtain a loan to repay Richey, she was informed she no longer owned the home because Richey recorded a warranty deed in February 2009 transferring ownership of the property to himself. Barclay confronted Richey, and he told her he owned the home and she could repurchase the home for $106,000.00, rather than the balance of the promissory note between them. Shortly thereafter, Barclay moved from the home to another house where she resided at the time of trial and ceased making payments to Richey.

Richey testified that in exchange for paying off Barclay's mortgage, Barclay agreed to sell her house to him, lease the home from him for a $1,000.00 per month, and receive an option to repurchase the home within two years. Richey explained his agreement with Barclay was similar to an agreement she was going to make with

3

another financial institution to avoid foreclosure, but his terms were more financially favorable to Barclay. Richey also stated that Kae Richey, his wife and Barclay's mother, filled out the documents, but no documents were signed until the following day when Richey and Barclay went to his bank where he wired the money to pay off her mortgage. Richey claimed Barclay signed the warranty deed, a lease, and a repurchase agreement at the bank in the presence of a notary.

Barclay denied ever signing a warranty deed, residential lease agreement, or an option to purchase the home, maintaining she never agreed to sell her house to Richey. Barclay testified to the terms of the note, stating the interest rate was twelve percent, with payments of $1,000.00 per month. However, she did not have a copy of the documents she claimed she signed. Barclay's mother, Kae, testified Richey offered or gave Barclay signed copies of the deed, lease agreement, and option to repurchase after they were executed at the bank.

Barclay admitted at trial she did not read any of the documents she signed because the agreement was with her parents. Barclay stated, however, that what she signed was handwritten, had a lot of scratch outs, and was done very quickly at her parents' house. When shown pages from a notary book she allegedly signed, Barclay questioned whether her signature was forged.[1] Nonetheless, Barclay stated she knew

---

[1] The Notary Public did not testify at trial.

whatever she signed at the bank was not a warranty deed requiring her signature to be notarized; rather, it was something for the wire transfer to pay off her outstanding mortgage.

The parties also disagreed about the amount of money Barclay paid Richey from February 2007 through early 2009. Barclay testified she paid Richey twenty-seven payments of $1,000.00 before she moved out and ceased paying. However, Barclay did not produce written evidence of every payment. To support her claim of partial payment, she submitted a checkbook registry evidencing only five $1,000.00 payments. Kae kept handwritten records that reflected Barclay paid, at most, $9,000.00, but Kae could not completely decipher her notes at trial. Nevertheless, while Richey claimed Barclay rented the house from him after he paid the mortgage off, Richey did not report any rental income on his 2007 tax return. On his 2008 tax return, Richey reported $6,000.00 in rental income from the property and in 2009, he reported $3,000.00 in rental income.

Richey explained that because Barclay failed to pay in accordance with their agreement, he filed the original executed warranty deed for record on February 17, 2009. Later, after seeking legal counsel, Richey added a more detailed property description and other changes to the original executed warranty deed and re-recorded

the "corrected" deed on July 22, 2009.[2] Richey testified, and Barclay acknowledged, he paid property taxes for the property from 2007 through 2014 in the total amount of $23,672.32. Richey also testified he purchased homeowner's insurance for the property after Barclay moved out in 2009. Richey testified he paid insurance premiums on multiple properties he owned, including the house at issue, from 2009 until 2012, which totaled $12,852.00. Richey further testified that from May 2013 until the time of trial, he paid property insurance premiums solely for the property in question in the total amount of $7,388.97. Barclay explained that Richey began insuring the property because after he recorded the warranty deed in 2009, the tax receipts and all other notices pertaining to the property were sent to Richey instead of her, and she could no longer insure the house.

---

[2] Deposition testimony was provided by Eddie Schroeder, an attorney, concerning the deeds Richey filed in the real property records wherein Barclay allegedly conveyed the house to Richey. Schroeder, who represented Richey regarding the deed, advised him the original deed did not contain a sufficient legal description, and the deed needed to be amended and refiled with a sufficient description to locate the property. Schroeder prepared an amended deed containing the legal description, and the amended deed was filed for record. Schroeder explained he considered the original deed a conveyance of the property to Richey but needed an amendment to identify the proper legal description. However, Schroeder acknowledged he never met Barclay and did not know for certain that she signed the original deed. Schroeder could not explain the reason for changing the date on the first page of the deed from February 1, 2007 to April 25, 2000 on the correction deed.

Richey further testified that in May 2011, he began remodeling the house. Richey explained the remodeling was extensive, to both the interior and exterior. He stated that Kae performed much of the labor on the house. Barclay admitted she saw people working in the house and acknowledged the exterior of the home was painted. However, she testified that when she observed the Richeys working on the home, she told them to stop but they continued.

Kae also testified about remodeling the house and explained she kept handwritten notes regarding the expenses incurred. She estimated a total of $50,000.00 was incurred for materials and labor remodeling the house. An expense report for materials was admitted into evidence showing a total of $20,230.60.

In pretrial proceedings, the trial court granted summary judgment in favor of Barclay on her declaratory judgment claim rendering the warranty deed filed for record on February 17, 2009, void for vagueness because of an insufficient property description. Additionally, the correction deed filed for record on July 22, 2009, was held to be void because it lacked Barclay's original signature. Thereafter, on May 1, 2015, the trial court granted a severance of those claims for which he granted partial summary judgment into a separate action, Cause No. D-194,462-A, and signed a final judgment in the severed cause. The trial court included a recitation that the final

judgment was to be "a final appealable judgment as it disposes of all claims of plaintiff and defendant under Cause No. D-194,462-A."

After a jury trial and post-judgment hearings in the original cause, the trial court rendered its final amended judgment that Barclay take nothing from Richey on her claims of fraud, statutory fraud, and conversion. The judgment ordered Richey take nothing on his reformation of deed claim, thereby rendering ownership of the property to Barclay. The final amended judgment awarded Richey unjust enrichment damages against Barclay in the following amounts: (1) $78,733.15 for paying off Barclay's mortgage; (2) $18,500.00 for expenses incurred in remodeling of the residence; (3) $23,672.32 for payment of property taxes; and (4) $7,800.00 for payment of insurance premiums. The trial court denied any award of attorney's fees asserting it no longer retained jurisdiction to award attorney's fees on the declaratory judgment claims.

Barclay raises three issues complaining of the trial court's denial of her motion for directed verdict on Richey's counterclaim for reformation of deed, the award of certain damages to Richey on the grounds of unjust enrichment, and the denial of her attorney's fees for her successful declaratory judgment.

## Motion for Directed Verdict

In her first issue, Barclay argues the trial court erred in denying her motion for directed verdict on Richey's counterclaim for reformation of deed. On appeal, Barclay contends Richey's claim for reformation of deed should not have been submitted to the jury, because it was barred by the statute of limitations and by the statute of frauds. However, when Barclay moved for directed verdict at trial, she only asserted Richey failed to prove the elements of his reformation of deed claim by failing to provide evidence of a prior written agreement complying with the statute of frauds. The trial court denied Barclay's motion and referred to its reasoning being the same as when it denied Barclay's motion for summary judgment, which included assertions of both affirmative defenses of statute of limitations and statute of frauds.

The jury rejected Richey's reformation of deed claim. Barclay, however, contends if the trial court had properly granted her directed verdict and the reformation of deed question had not been presented to the jury, the jury may have found differently on her own fraud claims against Richey. While her assertion of harm is considerably speculative, we need not address whether there was a conflict in the jury's answers to the questions if we determine the trial court properly denied her motion for directed verdict. Moreover, because Barclay limited her argument at

trial to the statute of frauds, we limit our review to determining whether her directed verdict should have been granted only on statute of frauds grounds. *See Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 170 (Tex. App.—Dallas 2009, no pet.) (explaining "a party's argument on appeal must comport with its argument in the trial court"); *see also* Tex. R. App. P. 33.1(a)(1).

In his live pleadings, Richey counterclaimed against Barclay seeking reformation of the February 1, 2007 deed he filed for record on February 17, 2009, based on mutual mistake. Richey and Kae testified Barclay agreed to sell Richey her house in exchange for his payment of the outstanding mortgage to a third-party lender to avoid foreclosure. Both Richey and Kae explained the agreement took place at their home and Barclay provided the deed form to be filled out. They also stated Kae completed the deed form using other documents from another proposed buyout transaction Barclay rejected as a guide. Richey then testified he and Barclay executed the deed at the bank in the presence of the notary on February 1, 2007, the day Richey transferred the funds to pay off Barclay's mortgage. Following the recording of the original warranty deed in February 2009, Richey explained he sought legal advice concerning the deed, which resulted in refiling the deed with a proper legal description as a correction deed. However, Richey failed to have Barclay execute a new corrected warranty deed. Instead, he re-recorded the same

10

deed with the added property description and other changes. Following the trial court's findings that the original deed was void for vagueness because it lacked a proper legal description and the correction deed void because Barclay did not sign after it was amended, Richey sought reformation of the original deed based on his alleged agreement with Barclay that she sell her house to him in exchange for paying off her mortgage.

We review a trial court's decision on a motion for directed verdict under the same standard of review as a legal sufficiency or no evidence challenge. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005); *Haynes & Boone, L.L.P. v. Chason*, 81 S.W.3d 307, 309 (Tex. App.—Tyler 2001, pet. denied) (citing *Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 187 (Tex. App.—Dallas 1996, no writ)) ("An appeal from the denial of a motion for directed verdict is . . . a challenge to the legal sufficiency of the evidence."). "[A] directed verdict is proper only if the evidence conclusively establishes the movant's right to judgment, negates the opponent's right to judgment, or is insufficient to raise a fact issue on a vital fact." *In re Estate of Longron*, 211 S.W.3d 434, 438 (Tex. App.—Beaumont 2006, pet. denied) (citing *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Boswell v. Farm & Home Sav. Ass'n*, 894 S.W.2d 761, 768 (Tex. App.—Fort Worth 1994, writ denied)).

11

At the close of Richey's evidence, Barclay moved for directed verdict arguing the statute of frauds barred Richey's reformation claim. *See* Tex. Bus. & Comm. Code Ann. § 26.01 (West 2015). Specifically, Barclay claims Richey's reformation claim is barred as a matter of law because there is no written document evidencing an agreement to sell her home to Richey, and the statute requires an agreement for the sale of real estate to be in writing. *Id.* § 26.01(a), (b)(4).

The Texas Supreme Court has stated "[t]he statue of frauds, [under section 26.01 of the Business and Commerce Code], is no bar to the reformation of a contract for the sale of land where the parties had an agreement and by their mutual mistake failed to state the agreement in the writing." *Nat'l Resort Communities, Inc. v. Cain*, 526 S.W.2d 510, 513 (Tex. 1975). A court may reform a contract to correct a mutual mistake in preparing a written instrument. *See Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987); *see also BH Contractors, LLC v. Helix Energy Sols. Grp., Inc.*, No. 14-15-01035-CV, 2017 WL 3611887, at *3 (Tex. App.— Houston [14th Dist.] Aug. 22, 2017, pet. denied) (mem. op.). "[R]eformation requires two elements: (1) an original agreement[;] and (2) a mutual mistake, made *after* the original agreement, in reducing the original agreement to writing." *Cherokee Water*, 741 S.W.2d at 379 (citing *Sun Oil Co. v. Bennett*, 84 S.W.2d 447, 451 (Tex. 1935)). "It is not enough that the writing differed from the oral

agreement." *Cain*, 526 S.W.2d at 514 (citing *Estes v. Republic Nat'l Bank of Dall.*, 462 S.W.2d 273 (Tex. 1970)); *Sun Oil Co.*, 84 S.W.2d at 451. The parties must have had a "definite and explicit" agreement, and the agreement must have been reached before the contract, which the party seeks to reform, was drafted. *Champlin Oil & Ref. Co. v. Chastain*, 403 S.W.2d 376, 382 (Tex. 1965); *see Cherokee Water*, 741 S.W.2d at 379. "A scrivener's failure to embody the true agreement of the parties in a written instrument is a ground for reformation on the basis of mutual mistake." *Gail v. Berry*, 343 S.W.3d 520, 524 (Tex. App.—Eastland 2011, pet. denied) (citing *Cornish v. Yarbrough*, 558 S.W.2d 28, 32 (Tex. Civ. App.—Waco 1977, no writ)).

"Parol evidence is admissible to show that the writing, because of a mutual mistake, incorrectly reflects the true agreement, and that the equitable remedy of reformation is available to correct such a mutual mistake in the written instrument." *Hardy v. Bennefield*, 368 S.W.3d 643, 650 (Tex. App.—Tyler 2012, no pet.) (citing *Estes*, 462 S.W.2d at 275). The underlying objective of reformation is to make the written instrument, i.e., the deed, express the original bargain the parties desired to put in writing. *Cherokee Water*, 741 S.W.2d at 379; *Cain*, 526 S.W.2d at 514. The Supreme Court explained in *Cain* that the requirements for reformation can be satisfied when, for example, the parol evidence indicates the mistake in the writing reflected a mutual mistake in the description in the written contract, not the identity

13

of the property itself. *Cain*, 526 S.W.2d at 514 (referring to the retrial of *Shotwell v. Morrow*, 498 S.W.2d 432, 434 (Tex. Civ. App.—Eastland 1973, writ ref'd n.r.e.)). The *Cain* Court relied on its reasoning from a prior decision, *Morrow v. Shotwell*, wherein the Court reversed and remanded a case, stating:

> [t]here is in the record strong evidence that the parties intended to describe a particular and identified tract of 12.375 in their contract, and that they were mutually mistaken in the belief that the description used was legally sufficient for that purpose. If that be a fact, Morrow would have been entitled to reformation of the contract had he sought it.

*Id.* (quoting *Morrow v. Shotwell*, 477 S.W.2d 538, 541 (Tex. 1972)).

Because parol evidence is admissible to determine a fact issue as to whether the parties reached a mutual oral agreement for Barclay to sell her house to Richey in exchange for him paying off her mortgage, but the attempt to reduce the agreement to a writing—the February 1, 2007 original deed—contained an overly vague property description to be effective, the statute of frauds did not bar Richey's reformation of deed counterclaim. *Id.* at 513. We conclude the trial court did not err in denying Barclay's motion for directed verdict. *See Estate of Longron*, 211 S.W.3d at 438. We overrule her first issue.

### Unjust Enrichment

While acknowledging she benefited from her agreement with Richey, regardless of its terms, Barclay asserts in her second issue that the evidence is legally

14

and factually insufficient to support certain damages awarded to Richey for unjust enrichment. Specifically, Barclay concedes Richey is entitled to receive the full amount of property taxes he paid on the property. Barclay also acknowledges that Richey should receive the amount he paid to pay off her mortgage, but that the amount should be offset by the sum of the $1,000.00 monthly payments she paid to him. With respect to the damages awarded to Richey for expenses incurred in the remodeling of the residence, Barclay contends she did not request repairs or remodeling to the home, and she received no benefit from Richey's work on the house. Thus, no damages should have been awarded for this portion of Richey's unjust enrichment claim. Finally, as Barclay was not the named insured with respect to the homeowner's insurance, she received no benefit and argues Richey should receive no damages for the premiums he paid.

In a jury trial, a legal sufficiency issue must be preserved by one of the following in the trial court: (1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the question to the jury; (4) a motion to disregard the jury's answer to a vital fact question; or (5) a motion for new trial. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220–21 (Tex. 1992) (citing *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985)); *Cecil v. Smith*, 804 S.W.2d 509, 510–11

(Tex. 1991). To complain on appeal that a jury finding is not supported by factually sufficient evidence or that the damages found by the jury are excessive, a party must have first raised the matter in a motion for new trial. *See* Tex. R. Civ. P. 324(b)(2), (4); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 281 (Tex. 1994); *Cecil*, 804 S.W.2d at 510.

During the jury charge conference, Barclay objected to parts of jury questions twelve and thirteen, which asked whether Barclay was unjustly enriched and, if so by how much, regarding Richey's unjust enrichment claims for amounts he expended for remodeling the house and paid toward property insurance premiums. The trial court overruled her objections to the charge. Then, post-verdict, Barclay filed a "Motion for Judgment" requesting the trial court enter judgment awarding only those damages for unjust enrichment allowable under Texas law. Within the proposed judgment filed by Barclay, she contended the evidence was legally insufficient to support a finding she was unjustly enriched by any amounts Richey claimed to have paid for remodeling or insuring the house. While acknowledging Richey was entitled to damages based on the amount he paid to extinguish her mortgage, for the first time, Barclay asserted in her motion that she was entitled to an offset against the amounts awarded by what she allegedly repaid to Richey.

After a hearing, the trial court awarded Richey the following for unjust enrichment in its amended final judgment: (1) $78,733.15 for payoff of Barclay's mortgage; (2) $18,500.00 for remodeling the residence; (3) $23,672.32 for payment of property taxes; and (4) $7,800.00 for payment of insurance premiums.

Unjust enrichment is an equitable theory that provides for the person receiving benefits unjustly to make restitution for those benefits. *Tex. Integrated Conveyor Sys. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied). "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). A key element of unjust enrichment is showing the person sought to be charged wrongfully secured or passively received a benefit it would be unconscionable to maintain. *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied) (quoting *City of Corpus v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex. App.—Corpus Christi 1987, writ denied)). It is not enough that the person sought to be charged received some incidental benefit. *See Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985).

## A. Property Taxes

Barclay does not contest the damages awarded to Richey for payment of property taxes. Therefore, we affirm the unjust enrichment damages awarded to Richey in the amount of $23,672.32.

## B. Payoff of Mortgage

Barclay acknowledges that Richey is entitled to damages for paying off her mortgage. However, she contends the amount of damages should be reduced or offset by the amount she paid to him. As we stated above, to preserve a factual sufficiency complaint following a jury trial, Barclay was required to file a motion for new trial, which she failed to file. *See* Tex. R. Civ. P. 324(b)(2), (4). While Barclay set forth her calculations and reasoning supporting what she contended was the proper damage amount Richey should be awarded for the mortgage payoff in her proposed judgment, we conclude the substance of that pleading does not contain the necessary arguments to preserve her complaint for review. *See id.*; *Daniels v. Empty Eye, Inc.*, 368 S.W.3d 743, 749 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing Tex. R. Civ. P. 71; *Ryland Enter., Inc. v. Witherspoon*, 355 S.W.3d 664, 666 (Tex. 2011)).

Nevertheless, even if we considered her issue preserved, the right to an offset or reduction in an amount owed is an affirmative defense. *Brown v Am. Transfer &*

*Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980); *Lone Starr Multi-Theatres, Ltd. v. Max Interests, Ltd.*, 365 S.W.3d 688, 704 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Rauscher Pierce Refsnes, Inc. v. Great Sw. Sav., F.A.*, 923 S.W.2d 112, 117 (Tex. App.—Houston [14th Dist.] 1996, no writ). Therefore, Barclay bore the burden of proof to plead and prove an offset or reduction to the amount of damages owed Richey for his payment of Barclay's mortgage. *See* Tex. R. Civ. P. 94; *Brown*, 601 S.W.2d at 936; *Rauscher Pierce Refsnes*, 923 S.W.2d at 117. Barclay failed to plead offset and Barclay does not argue the parties tried the defense by consent other than to state the issue was an evidentiary issue, and Richey did not object to evidence of her payments to Richey. In any case, Barclay did not request or submit proposed questions or instructions for the jury to make any findings related to the defense of offset as to the damages awarded Richey for paying off Barclay's mortgage. As a result, regardless of whether the issue questioning the factual sufficiency of the evidence supporting the damages awarded to Richey for the payoff of Barclay's mortgage is properly before us, Barclay waived this issue by failing to request findings concerning her alleged offset. *See Lone Starr*, 365 S.W.3d at 704; *Columbia Med. Ctr. of Las Colinas v. Bush ex rel. Bush*, 122 S.W.3d 835, 862 (Tex. App.—Fort Worth 2003, pet. denied); *see also* Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 272,

19

274. We affirm the trial court's award of unjust enrichment damages in the amount of $78,733.15 to Richey for paying off Barclay's mortgage.

## C. Remodeling of the Residence

Barclay objected at trial to jury questions twelve and thirteen contending there was no evidence she benefited from Richey's remodeling or repairing the residence. Barclay argued at trial and on appeal there was "no evidence of the increase in the market value" of the home. Accordingly, she contended the remodeling subpart of the unjust enrichment claim should be eliminated as there was no evidence she was unjustly enriched.

"When a party attacks the legal sufficiency of an adverse finding on which it did not have the burden of proof, it must demonstrate that there is no evidence to support the adverse finding." *O'Brien v. Daboval*, 388 S.W.3d 826, 837–38 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Bellino v. Comm'n for Lawyer Discipline*, 124 S.W.3d 380, 385 (Tex. App.—Dallas 2003, pet. denied)). In conducting a legal sufficiency review, we credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d 802 at 827. We consider the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. *Id.* at 822. We will sustain a no-

20

evidence point only if (1) the record reveals a complete absence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810; *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If more than a scintilla of evidence exists to support a finding, the legal sufficiency challenge fails. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)).

The factfinder is the sole judge of the credibility of witnesses and the weight to be given their testimony; the factfinder is free to choose to believe one witness over another. *Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 312 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *City of Keller*, 168 S.W.3d at 819). It is for the factfinder to resolve conflicting evidence, and we may not impose our own opinion in opposition to the factfinder's implied credibility determinations. *Id.* If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. *City of Keller*, 168 S.W.3d at 822.

Richey and Kae testified to the work performed, amounts they paid to remodel the house, and submitted numerous receipts and pictures supporting their testimonies. Barclay's children acknowledged the improvements to the property. Barclay also conceded the home's exterior had at least been painted. The remodeling labor and materials Richey paid for became an inseparable part of the residence. Because of the jury's favorable ruling that Barclay did not agree to sell her home to Richey and the trial court's pretrial grant of summary judgment relief setting aside the warranty deeds to Richey, Barclay remains the owner of the property. Therefore, Barclay retains the benefits of the remodel work paid for by Richey. *See Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 112–13 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding evidence legally sufficient to support unjust enrichment claims based on evidence of the value of installed pieces of equipment and personal property retained by one being charged with being unjustly enriched); *see also City of Hous. v. Swinerton Builders, Inc.*, 233 S.W.3d 4, 10 n.7 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (explaining under another equitable doctrine, quantum meruit, that the proper measure of damages includes the reasonable value of the work performed and the materials furnished).

Viewing the evidence in the light most favorable to the judgment, we conclude that more than a scintilla of evidence supports the findings and damages awarded as

costs paid for remodeling the house under Richey's unjust enrichment claim. We affirm the judgment's award of damages as determined by the jury and trial court in the amount of $18,500.00 for remodeling the residence.[3]

**D. Insurance Premiums**

Barclay objected to jury questions twelve and thirteen submitting the unjust enrichment damage issues to the jury, arguing, among other things, there was no evidence she benefited from homeowner's insurance carried by and paid for by Richey on the home. At trial, Richey testified he insured the home from 2009 until the time of trial. No evidence suggested homeowner's insurance was required under the terms of any agreement alleged by Richey, that Barclay was named as an additional insured on any policy obtained, or that a claim was submitted during this time and proceeds used to benefit the residence. We find no evidence or inference that Richey obtained the insurance for Barclay's sake. To the contrary, Richey maintained he owned the home and Barclay was no more than a lessee during the period he provided the insurance. Thus, we conclude there was no evidence that Barclay received any benefit from Richey maintaining insurance on the house. *See*

---

[3] We do not address any potential issue concerning the factual sufficiency of the award. Barclay neither argued the evidence was factually insufficient to support the award nor filed a motion for new trial to preserve a factual sufficiency complaint regarding the sufficiency or adequacy of the evidence supporting the amount awarded. *See* Tex. R. Civ. P. 324(b)(2), (4).

23

*Heldenfels Bros.*, 832 S.W.2d at 41; *Tex. Integrated Conveyor Sys.*, 300 S.W.3d at 367; *Villarreal*, 136 S.W.3d at 270. The evidence is legally insufficient to support the damage award for Richey's payment of insurance premiums. *See City of Keller*, 168 S.W.3d at 810. Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain. *Villarreal*, 136 S.W.3d at 270. A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros.*, 832 S.W.2d at 41. There is no legal or equitable basis for Richey to prevail on this claim. We sustain this portion of Barclay's second issue and reverse the trial court's judgment awarding Richey $7,800.00 in unjust enrichment damages for the payment of insurance premiums.

In conclusion, after reviewing the unjust enrichment damages awarded to Richey, we affirm the following awards (1) $78,733.15 for payoff of Barclay's mortgage, (2) $18,500.00 for the remodeling the residence, and (3) $23,672.32 for payment of property taxes. We reverse the damages award to him for unjust enrichment for payment of insurance premiums and render Richey take nothing for this portion of his claim. The amended final judgment shall be modified to read: "$0.00 for payment of insurance premiums." *See* Tex. R. App. P. 43.2(c). We affirm in part and overrule in part Barclay's second issue.

24

**Attorney's Fees**

In her third issue, Barclay contends the trial court should have awarded her reasonable and necessary attorney's fees required to obtain the pretrial declaratory judgment regarding the deeds Richey filed for record. Both the trial court and Richey maintain the lower court no longer maintained plenary power to award attorney's fees, and thus any claim for attorney's fees is barred. We agree.

On June 13, 2014, in addition to numerous rulings in an interlocutory order, the trial court granted Barclay's motion for summary judgment on her declaratory judgment claims. Then, on May 1, 2015, the trial court granted Richey's motion requesting the trial court sever the claims for which it granted motions for partial summary judgment on June 13, 2014, including Barclay's declaratory judgment claim, from the remaining claims into a separate cause. The severance order specifically proclaimed it did not dispose of Barclay's claim for attorney's fees on her declaratory judgment claim, but rather continued the attorney's fees request with the remainder of the case. No further action was taken regarding the severance order. Despite the trial court's notification to Barclay she was not entitled to attorney's fees for her declaratory judgment claim following the jury trial, she presented her evidence regarding the fees to the trial court in a hearing to the bench. After presenting her evidence, the trial court again rejected her claim reiterating it lacked

jurisdiction to award Barclay attorney's fees as the prevailing party on her declaratory judgment claim, because the trial court previously severed that portion of the claim.

Rule 41 of the Texas Rules of Civil Procedure states "[a]ny claim against a party may be severed and proceeded with separately." Tex. R. Civ. P. 41. Generally, a trial court has broad discretion in the severance of cases, and its decision will not be disturbed absent an abuse of discretion. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990) (citations omitted); *In re Henry*, 388 S.W.3d 719, 726 (Tex. App—Houston [1st Dist.] 2012, orig. proceeding). "The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience." *Guar. Fed. Sav. Bank*, 793 S.W.2d at 658 (citing *St. Paul Ins. Co. v. McPeak*, 641 S.W.2d 284 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.)). A trial court properly exercises its discretion in severing claims if (1) the controversy involves more than one cause of action, (2) the severed claim is one that could be asserted independently in a separate lawsuit, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *In re Henry*, 388 S.W.3d at 726 (citing *In re Liu*, 290 S.W.3d 515, 520 (Tex. App.— Texarkana 2009, orig. proceeding)).

26

Regardless of the broad discretion in severing cases, such discretion should not be exercised contrary to legal rules and principles applicable in the particular case. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (discussing trial court's broad discretion when considering attorney's fees). "Severance of a single cause of action into two parts is never proper and should not be granted for the purpose of enabling the litigants to obtain an early appellate ruling on the trial court's determination of one phase of the case." *Pierce v. Reynolds*, 329 S.W.2d 76, 79 n.1 (Tex. 1959).

The trial court's severance necessarily implies a conclusion that Barclay's claim for declaratory relief under section 37.003 of the Declaratory Judgments Act and her claim for attorney's fees under section 37.009 of the Act can be adjudged in independent lawsuits culminating in separate and distinct judgments. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.003, 37.009 (West 2015). As the Austin Court of Appeals explained, and we agree, these two claims are merely different phases of a single cause of action, as even section 37.009 prescribes a single proceeding under Chapter 37 of the Act. *Dalisa, Inc. v. Bradford*, 81 S.W.3d 876, 880 (Tex. App.—Austin 2002, no pet.); *see also Town of Flower Mound v. Upper Trinity Reg'l Water Dist.*, 178 S.W.3d 841, 843 (Tex. App.—Fort Worth 2005, no pet.) (agreeing with the reasoning in *Dalisa* that a severance of a claim for declaratory relief under

27

section 37.003 of the Act from a claim for attorney's fees under section 37.009 is improper "because the two claims are merely different phases of a single cause of action"). Thus, like the *Dalisa* Court, we conclude the trial court erred when it severed Barclay's claim for declaratory relief from her claim for attorney's fees under the Act. *See Dalisa*, 81 S.W.3d at 881.

Barclay did not appeal the final judgment entered by the trial court in the severed cause. Rather, she continued the case prosecuting her attorney's fees claim in this cause. Except in limited circumstances not applicable here, a party must raise its complaint about improper severance at the time of the alleged improper severance, not later. *See Nicor Expl. Co. v. Fla. Gas Transmission Co.*, 911 S.W.2d 479, 482–83 (Tex. App.—Corpus Christi 1995, writ denied) (explaining the finality of severance judgments if alleged error is not valid on the face of the severance). As Barclay neither appealed from the severed cause, nor objected to the trial court's ruling severing her claim for attorney's fees from the final judgment in the severed cause, she waived her right to complain in the cause associated with this appeal about the trial court's decision that effectively severed her claim for attorney's fees into the cause in which she did not appeal. Thus, the trial court correctly ruled that it no longer retained jurisdiction of the severed cause because its plenary power expired thirty days after it rendered judgment in the severed cause. *See* Tex. R. Civ. P. 329b.

We conclude the trial court properly denied Barclay's claim for attorney's fees. We overrule her third issue.

**Conclusion**

We overrule Barclay's first issue pertaining to the trial court properly overruling her motion for directed verdict on Richey's reformation of deed counterclaim. With respect to Barclay's second issue concerning Richey's award of damages for unjust enrichment, we affirm in part and reverse and render in part. The amended final judgment should reflect the following unjust enrichment damages awarded to Richey (1) $78,733.15 for paying off Barclay's mortgage, (2) $18,500.00 for remodeling the residence, (3) $23,672.32 for payment of property taxes, and (4) $0.00 for payment of insurance premiums. We affirm the trial court's denial of Barclay's claim for attorney's fees. We affirm the amended final judgment of the trial court, as modified.

AFFIRMED IN PART; REVERSED AND RENDERED IN PART.

_____
CHARLES KREGER
Justice

Submitted on May 2, 2018
Opinion Delivered January 24, 2019

Before Kreger, Horton, and Johnson, JJ.

29